# CHARLESTON.

BELLE-MEAD LUMBER CO. v. TURNBULL *et al.*

Submitted November 23, 1915.   Decided December 7, 1915.

1. INDEMNITY—*Bond of Indemnity—Right of Action—Postponement— Logging Contract.*

> The exercise by the employer, in a logging contract, of an optional right, after breach of the contract and notice to the employee and his surety in a bond of indemnity, to take charge of the work and all

teams, tools, machinery, implements and appliances used therein, and complete it, "with as reasonable cost for same as possible," does not postpone his right of action on the bond of indemnity, until completion of the work. (p. 351).

2. SAME.

Postponement or limitation of the right of action does not arise by implication or inference, from the clause giving such right, the purpose of which was to enable the covenantee to get possession of the timber, rights of way, tram-ways, engines, cars, tools, machinery and appliances and complete the work, as a means of preventing loss and delay in the execution of his purpose. (p. 351).

3. COVENANTS—*Implied Covenant—Basis—Legal Necessity.*

An implied covenant can be justified only on the ground of legal necessity. It is not enough merely to say fairness, prudence or wisdom demanded it under the circumstances. It must be necessary to the operation of the contract or of the words found in it, or to the effectuation of the intention of the parties, made manifest by their words. (p. 355).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Webster County.

Action by the Belle-Mead Lumber Company against James C. Turnbull and others. Judgment for defendants, and plaintiff brings error.

*Reversed and remanded.*

*Morton & Wooddell,* and *Haymond & Fox,* for plaintiff in error.

*W. T. Talbott, L. L. Dyer,* and *Hall Bros.,* for defendants in error.

POFFENBARGER, PRESIDENT:

The only inquiry raised by this writ of error, is the sufficiency of a declaration, a demurrer to which was sustained, and of an amended declaration to the filing of which the court sustained an objection.

The common law requirement of a direct allegation of the corporate existence and character of a plaintiff corporation has been excused, discontinued or abrogated by sec. 41 of ch. 125 of the Code, ser. sec. 4795. *Snyder* v. *Philadelphia Co.,* 54 W. Va. 149; *State* v. *Railroad Co.,* 50 W. Va. 235; *State* v.

*Coal & Coke Co.*, 49 W. Va. 140; *Lively* v. *Building Association*, 46 W. Va. 182; *Douglass* v. *K & M. Railway Co.*, 44 W. Va. 267; *Gilletts* v. *American Stove & Hollow Ware Co.*, 29 Gratt. 565.

The remaining ground of demurrer is that the declaration discloses no cause of action, or, rather that the action was prematurely instituted. The cause of action alleged is the breach of a bond given by Turnbull, with the United States Fidelity and Guaranty Co. as his surety, to indemnify and save harmless the plaintiff, from any pecuniary loss resulting from breach of a certain contract by which Turnbull had obligated himself to cut, log and deliver into a pond at the plaintiff's mill, all of the merchantable timber on certain large tracts of land in Webster County. This contract was a large undertaking and the penalty of the bond was fixed at $10,000.00. At the price of $8.75 per thousand feet, log scale, Turnbull bound himself to deliver the timber as aforesaid, in sufficient quantities to supply a mill of the capacity of 500,000 feet per month, with right in the plaintiff to increase the consumption of the mill to any amount not exceeding 900,000 feet per month, by giving sixty days notice. At the time of the execution of the contract, the plaintiff itself seems to have been conducting the logging operation and, by the contract, it sold Turnbull certain mules, horses, harness, chains and other implements at the price of $3,500.00, to be paid by monthly deductions of $500.00 from the amounts to become due him under his contract, and a vendors lien was retained on the property to secure the purchase price. In addition to this property, he was to use a locomotive, log-loader, log-cars, and other tools and equipment belonging to the plaintiff, in the performance of the contract. In view of the relative ease and inexpensiveness of the logging of the timber from certain tracts, the contract bound him to log the timber from those tracts and from other less accessible ones in about the same quantities. He was also required to give a satisfactory bond in the penalty of $10,000.00, to insure the completion of the contract, or to give a lien on his property, in about the same amount, conditioned for faithful performance thereof.

The declaration alleges the contract further provided as follows: "That should the said Turnbull fail to keep said

mill going as specified, or fail to keep and perform each and all of the covenants and agreements therein specified, then the plaintiff should have the right after five days notice to the said Turnbull and to his bondsmen, of the failure to comply with the said agreement, and should his bondsmen not forthwith take charge and complete the said contract, then the plaintiff could take charge of all equipment, teams, tramways, and other improvements, whether the property of the plaintiff or of the said Turnbull, and used in said logging operations, without process of law, and proceed with the completion of the stipulations of the said contract for and on behalf of said Turnbull with as reasonable cost for same as possible. All of said property to be liable for the said costs of completion.''

It then alleges the execution of the bond in question, and sets forth the condition thereof as follows: ''Now, therefore, the condition of the foregoing obligation is such that if the principal shall well and truly indemnify and save harmless the said Obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of said contract on the part of said principal to be performed, then this obligation to be void; otherwise to remain in full force and effect in law; PROVIDED, however, this bond is issued subject to the following conditions and provisions:

FIRST: That no liability shall attach to the Surety hereunder unless, in event of any default upon the part of the principal in the performance of any of the terms, covenants, or conditions of said contract, the Obligee shall promptly, and in any event not later than thirty days after the knowledge of such default, deliver to the Surety at its office in the city of Baltimore, written notice thereof, with a statement of the principal facts showing such default, and the date thereof; nor unless said Obligee shall deliver written notice to the Surety at its office aforesaid, and the consent of the Surety thereunto obtained before making the principal the final payment provided for under the contract herein referred to. SECOND: That in case of such default on the part of the Principal the Surety shall have the right, if it so desires to assume and complete or procure the completion of said contract; and in case of such default the Surety shall be subro-

gated and entitled to all the rights and properties of the principal arising out of said contract and otherwise, including all securities and indemnities theretofore received by the Obligee, and all deferred payments, retained percentages and credits, due to the Principal at the time of such default or to become due thereafter by the terms and dates of the contract. THIRD: That in no event shall the Surety be liable for a greater sum than the penalty of this bond, or subject to any suit, action or other proceedings thereon that is instituted later than the 31st day of December, A. D. 1911.''

Performance by the plaintiff, of all the covenants, stipulations, agreements and conditions imposed upon it by the contract; failure of Turnbull to perform and discharge the obligations thereof, resting upon him, and particularly his failure and refusal to furnish and deliver logs as required by it; the giving to him and to his surety in the bond of indemnity, of the notice required by the contract and the bond; failure of the surety to exercise the option given to it, to assume and complete the work, after notice of breach of the contract; and exercise by the plaintiff, of the option reserved to it, to assume charge of the work and take over all the machinery, teams and appliances used in connection therewith and prosecute it to completion, with as reasonable cost as possible, with a resultant out-lay in costs and expenses, exceeding, by a large amount, to-wit: the sum of $10,000.00, the value of the work at the contract price of $8.75 per thousand feet; were the further material allegations.

The two counts of the amended declaration are not essentially different from the single count of the original one. The first is much longer and more elaborate and the second shorter and more general in its allegations. All are founded upon the same contract and bond.

That the declaration would have been good, if it had directly alleged the existence and character of the corporation and omitted the allegation of the assumption and part performance of the work by the plaintiff, after the breach of the contract by Turnbull, is conceded by the demurrant. But it is urged that the right of action which would otherwise have appeared, is destroyed by the allegation of plaintiff's exercise of its option to take over and perform the work, in

case of default, and that, to have made the declaration good, with that allegation in it, it would have been necessary to show that the work had been entirely performed and completed, with a resultant loss.   In other words, it is said that, in view of the exercise of the option, the measure of damages fixed by the contract, in case of the exercise thereof, is the difference between the entire cost of performance of the contract, by the plaintiff at actual cost, and what it would have amounted to at the contract price, wherefore no right of action can accrue until all of the work shall have been completed.   For this proposition, no authority has been shown, and we are unable to concur in it.

For a breach of any contract, the law gives an immediate right of action unless, by the terms of the contract, such right is postponed.   Neither· the option clause, nor any other provision of the contract, nor the bond of indemnity, expressly postpones the right of action, in any event, for a breach of the contract or the condition of the bond.   Conclusively presumed to know the law, the parties are deemed to have contracted with reference thereto.   In the absence of an express postponement of right of action, it could arise only by inference or implication, from the terms, provisions and purpose of the contract.   With a single exception, both the contract and the bond are absolutely silent on the subject of the right of action for a breach of either.   The latter expressly forbids any on it, after December 31, 1911.   The inference or implication of postponement must arise, if at all, from the supposed prescription of a measure of damages by the option clause, an assumption not sustained by its terms.   It does not say what the measure of damages shall be nor when damages may be recovered.   It merely obligates the plaintiff, in the case of the exercise of its option, to complete the contract for and on behalf of Turnbull ''with as reasonable costs for same as, possible.''   There is no express stipulation as to damages, their amount, or the time of recovery thereof.   The stipulation as to the cost of completion of the contract will have an important bearing and effect upon the question of damages, but it is not a broad, comprehensive rule or measure of damages for breach of the contract.   It contains not a word about damages or a right. of action.   Its purpose is to confer a

greater right upon the convenantee than the law gives, not to diminish it. The covenantee, not the covenantor, is the party obviously intended to be benefited by the clause, and, in conferring this benefit, the contract does not, in terms, abate anything from the rights given by the law.

Without this clause, the measure of damages would be the same. For completion of the work, as an element of the damages, nothing more than the reasonable cost thereof could be allowed. Hence, the phrase relied upon as fixing a contractual basis for estimating the damages is no more than a declaration of the legal duty of the covenantee, respecting expenditures made with intent to charge them as damages. The real purpose of the clause was to enable the covenantee to get possession of its own property, the timber, rights of way, tramways, locomotive, cars and other machinery and the property of the covenantor used in the work, as a means of preventing delay in the execution of its own larger purposes. Limitation of its right of action for damages was clearly not within this purpose.

No justification for the addition of such a limitation, as one implied, can be found in any of the rules of interpretation. Implied covenants can be justified only on the ground of legal necessity. It is not enough merely to say fairness, prudence or wisdom demanded it under the circumstances. It must be necessary to the operation of the contract or of words found in it or effectuation of the intention of the parties, made manifest by their words. *White* v. *Bailey*, 65 W. Va. 573; *U. S.* v. *Fisher*, 2 Cranch. 358; *Margan* v. *Railroad Co.*, 96 L. S. 716; *Jackson* v. *Lewis*, 17 Johns. (N. Y.) 475; *Sterling* v. *Maitland*, 5 B. & S. 840; *Oriental Steamship Co.* v. *Tylor*, 2 Q. B. 518.

The position of the demurrant failing for these reasons, the original declaration is sufficient and the demurrer thereto was erroneously sustained.

Based on the same contract as the original, and being in substance and effect practically the same as the original, the amended declaration was sufficient and did not state a new cause of action. Hence, the court erred in sustaining the objection to the filing thereof.

The judgment will be reversed and the demurrer to the

original declaration and the objection to the filing of the amended declaration overruled and the case remanded.

*Reversed and remanded.*