INDIAN TERRITORY ILLUMINATING OIL CO. v. ROSAMOND.

No. 29363.   Dec. 23, 1941.

*120 P. 2d 349.*

W. P. McGinnis, Fred M. Carter, C. E. Bailey, Samuel H. Riggs, and Robert R. McCracken, all of Bartlesville, Donald Prentice, of Tulsa, Archibald Bonds, of Oklahoma City, and Anglin & Stevenson, of Holdenville, for plaintiff in error.

Park Wyatt and Byron Lamun, of Shawnee, for defendant in error.

Alvin Richards, J. H. Hill, John R. Ramsey, M. D. Kirk, Wm. M. Fleetwood, Jr., Ray S. Fellows, Y. P. Broome, and T. W. Francis, all of Tulsa, and R. B. F. Hummer, Hayes McCoy, and R. O. Mason, all of Bartlesville, amici curiae.

HURST, J. This is an action by Louie F. Rosamond, plaintiff, against Indian Territory Illuminating Oil Company, defendant, to recover damages resulting from the failure of defendant to protect from drainage by offset wells an 80-acre tract of land in which plaintiff owned a one-eighth interest in the oil and gas. Defendant was the owner of the oil and gas lease on the tract. From a verdict and judgment for plaintiff in the sum of $2,995, defendant appeals.

Plaintiff claimed that oil was being drained from under the 80-acre tract by three offset wells on adjoining lands, one north of the northeast corner of the tract, one east of the northeast corner, and one diagonally north and east of the northeast corner. He contended that under the implied covenant of the oil and gas lease of defendant it was the duty of defendant to drill a well in the northeast ten acres of the 80-acre tract, which would offset the wells above mentioned and protect the tract from drainage thereby, and sought damages for drainage resulting from defendant's failure to drill such well. The three wells which he contends drain the oil from under his land were drilled in 1928 and 1929. In 1929 defendant drilled a well in the southeast corner of the 80-acre tract which, with a well in the northeast corner, would have protected the tract from the surrounding wells. After the drilling of the well in the southeast corner plaintiff and his co-owners in the mineral interests under the tract requested that a well be drilled in the northeast corner, but this was not done. Plaintiff's co-owners then brought an action for damages for failure to drill in the northeast corner of the land, which action was settled in October, 1934, by defendant paying such co-owners the sum of $8,000 and assigning to them the oil and gas lease, excepting the southeast ten acres on which the well drilled by defendant was located. Plaintiff was not a party to the action or settlement, and after the settlement was made he again demanded that the well be drilled or damages paid him for

drainage, but all negotiations failed, and this action was filed on August 2, 1937.

Defendant argues six propositions: (1) That the action was barred by the statute of limitations; (2) that plaintiff failed to prove that a well drilled in the northeast corner of the land at or shortly after the well was drilled in the southeast corner would have been a paying well; (3) refusal of the trial court to sustain its demurrer to the evidence, and in refusing to give its requested instructions Nos. 1, 2, and 4; (4) error in the rejection and admission of evidence; (5) error in giving the jury instructions Nos. 3, 4, 5, 7, 9, and 10; and (6) error in overruling its motion for new trial and rendering judgment against it. These contentions will be considered in order.

1. Defendant argues that as the wells of which plaintiff complains were drilled in 1929, plaintiff's cause of action arose at that time, and that, having failed to file it within five years from that time, it was barred by the first subdivision of section 101, O. S. 1931, 12 O. S. A. § 95, the five-year limitation statute on written contracts. Many authorities are cited holding that a cause of action arises, and that the limitation statute begins to run, at the time when the plaintiff could first maintain his action, or upon the defendant's first breach of its duty to him. Plaintiff says that the obligation to protect the land from drainage continued during the entire term of the lease, and that he could wait until the time of complete performance, or at least until defendant, on October 4, 1934, disabled itself from further performing by assigning the lease, and then sue for and recover damages for all drainage previously sustained. He relies upon 13 C. J. 651, 655, and Ross v. Tabor, 53 Cal. App. 605, 200 P. 971, Union Sugar Co. v. Hollister Estate Co., 3 Cal. 2d 740, 47 P. 2d 273, and Benton v. Roberts, 35 Ga. App. 749, 134 S. E. 846.

We are of the opinion, and hold, that plaintiff's right to maintain the action is not barred by the statute of limitations. The implied covenant of the lease, that the lessee will protect the land from drainage by adjoining wells so long as the drilling of a protection well or wells will, in the judgment of a reasonably prudent operator, be a profitable undertaking, is a continuing covenant, the obligation resting upon the lessee during the existence of the lease, or as long as his ownership thereof continues. Plaintiff was not required to treat defendant's failure to drill the well in 1929 as a complete breach of the lease, and bring an action for the cancellation and forfeiture thereof. Obviously he could not then bring his action for damages which he might suffer during the future life of the lease, for such damages would be contingent, speculative, and wholly incapable of ascertainment. See 37 C. J. 852; 34 Am. Jur. 111. The implied covenant being a continuing covenant, the right to maintain an action for its breach continues so long as the breach continues, and plaintiff is damaged thereby.

2. Since we hold that the entire cause of action is not barred, the next question presented is what is the applicable statute of limitations. And since the cause must be retried, it is our duty to determine this question for the guidance of the trial court. The rule is that a breach of a continuing covenant gives rise to a cause of action each day the breach continues, and any claim for breach back of the statutory period within which the action may be brought is barred. 34 Am. Jur. 111; Merrill, Covenants Implied in Oil & Gas Leases (2d Ed.) § 208; Wood, Limitations (2d Ed.) § 187d6; 37 C. J. 852; Powell v. Danciger Oil & Ref. Co. (Tex. Civ. App.) 134 S. W. 2d 493; Sinclair O. & G. Co. v. Bryan (Tex. Civ. App.) 291 S. W. 692; Aetna Life Ins. Co. v. Langston, 189 Ark. 1067, 76 S. W. 2d 50; Carnegie Realty Co. v. Carolina, C. & O. Ry. Co., 136 Tenn. 300, 189 S. W. 371; Atlanta, K. & N. Ry. Co. v. McKinney, 124 Ga. 929, 53 S. E. 701, 6 L. R. A. (N. S.) 436; Findley v. Warren, 248 Pa. 315, 94 Atl. 69.

The reason for the rule is that while the repeated and successive breaches of the implied covenant continue, the right of action for subsequent breaches does not accrue upon the first breach, but ac-

crues and the statute begins to run as and when each breach occurs. Like an account not mutual in nature, but all on one side, the cause of action arises on the date of each item or breach, and the items within the statutory period of limitations do not draw after them those of longer standing. Sharp v. Miller, 94 Okla. 217, 221 P. 747; 34 Am. Jur. 125; 37 C. J. 868.

The defendant and certain counsel amici curiae urge the five-year statute of limitations relating to actions on written contracts, subdivision 1, section 101, O. S. 1931, 12 O. S. A. § 95. Other counsel amici curiae argue that the implied covenant is not written in the lease, and that the action is governed by subdivision 2 of section 101, which prescribes a three-year limitation for actions upon contracts, express or implied, not in writing.

In support of the contention that the three-year statute controls counsel amici curiae cite Thomas v. Pacific Beach Co., 115 Cal. 136, 46 P. 2d 899, United States F. & G. Co. v. Gray (Del.) 6 Boyce 161, 97 Atl. 425, Knight v. St. Louis, I. M. & S. Ry. Co., 141 Ill. 110, 30 N. E. 543, Liverman v. Cahoon, 156 N. C. 187, 72 S. E. 327, Yndo v. Rivas, 107 Tex. 408, 180 S. W. 96, Kirwan v. Alamo Iron Wks. (Tex. Civ. App.) 155 S. W. 986, and Duncan v. Gisborn, 17 Utah, 209, 53 P. 1044. Upon examination we do not think these authorities persuasive. The California and Utah cases involve the obligation to repay the consideration paid by the vendee in a contract for the sale of real estate where the vendor was unable to deliver title. The obligation arose only when the contract had been nullified because of the failure of performance. The other cases, except Kirwan v. Alamo Iron Wks., involve contribution claimed by one who has paid the debt of another. The Kirwan Case was based upon an implied warranty of the fitness of machinery for the purpose for which it was bought. As to whether such an action is based on the contract there is a diversity of opinion. See John A. Roebling's Sons v. Southern Power Co., 145 Ga. 761, 89 S. E. 1075, and the discussion in the dissenting opinion.

The rule to be deduced from the cases where the question has been given careful consideration is that where the implied obligation or agreement grows immediately out of or is necessarily included in the written instrument to fully effectuate it, where it is a direct implication from the nature of the contract and the purpose of the parties, an action thereon is based on the written instrument. But where the implied obligation or agreement is one not necessarily included in the written instrument to effectuate the intention of the parties, but is collateral thereto, and only remotely connected therewith, the action thereon is not on the written contract. See O'Brien v. King, 174 Cal. 769, 164 P. 631; Wilson v. Wallace, 113 Cal. App. 278, 298 P. 86; John A. Roebling's Sons v. Southern Power Co., above.

The rule applying to the interpretation of contracts generally is that whatever is necessarily implied in a contract is as much a part thereof as if expressly stated therein. 13 C. J. 558; 17 C. J. S. 778; 6 R. C. L. 856; 12 Am. Jur. 765; Wright v. Fidelity & Deposit Co. of Maryland, 176 Okla. 274, 54 P. 2d 1084.

The rights and liabilities of the parties to an oil and gas lease are contractual. The lease constitutes the contract. In general the law relating to the interpretation of other contracts applies to such contracts. The courts have no right to make a contract for the parties different from that actually entered into by them. Northwestern Oil & Gas Co. v. Branine, 71 Okla. 107, 175 P. 533, 3 A. L. R. 344; 24 Am. Jur. 552. If the contract is ambiguous or if the contract is silent on a certain point, then it is the duty of the court to apply settled rules for interpreting such contracts, ascertain the intention of the parties, and then carry out such intention. Anthis v. Sullivan Oil & Gas Co., 83 Okla. 86, 203 P. 187. It is said that the law or the courts imply such covenants. But they imply them only to carry out the intention of the parties, where there is no statute prescribing such duties. The courts have no right to impose terms not intended by the parties or to relieve

them of obligations that may seem harsh, in the absence of fraud, accident, or mistake. Federal Deposit Ins. Corp. v. Grim, 184 Okla. 275, 86 P. 2d 774; 6 R. C. L. 835. It is under their power and duty to interpret the lease that the courts have established the doctrine of implied covenants. The very term "covenant" ordinarily implies an agreement.

In the leading case of Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213, it was said:

"Whatever is necessary to the accomplishment of that which is expressly contracted to be done is part and parcel of the contract, though not specified. . . . The question is essentially one of intention. . . . A covenant arising by necessary implication is as much a part of the contract—is as effectually one of its terms—as if it had been plainly expressed."

We have held that such covenants arise "by necessary implication from the nature of the lease, and other stipulations therein contained." Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 P. 610. Summers, in his work on Oil & Gas (Perm. Ed.) vol. 2, §§ 397, 398, and 399, refers to covenants as being implied "to accomplish the manifest intention of the parties" (page 333) and "to carry out what the parties must have intended" (page 339). In 40 C. J., at page 1053, it is said that such implied covenants are those only which "the courts may read into the lease for the purpose of effectuating the intentions of the parties," citing Allen v. Colonial Oil Co., 92 W. Va. 689, 115 S. E. 842. In Acme Oil & Mining Co. v. Williams, 140 Cal. 681, 74 P. 296, it is said that the implied covenant for diligent operation "stands on the same footing as if it was expressly contained therein." In Brinner v. Union Oil Co. (C. C. A. 10th Cir.) 81 Fed. 437, 105 A. L. R. 454, Judge Bratton, referring to such implied covenants, said that "implication when used in that sense is synonymous with intention." Such implied covenants do not arise out of public policy, in the absence of a statute on the subject (and we have none), for it is fairly well set-

tled that where the parties have inserted in the contract a clause against or with reference to such covenants, none will be implied. Eastern Oil Co. v. Beatty, 71 Okla. 275, 177 P. 104; Central States Production Corp. v. Jordan, 184 Okla. 262, 86 P. 2d 790; Summers, Oil & Gas (Perm. Ed.) vol. 2, § 397; 24 Am. Jur. 549. That such covenants are part of the lease, embodied therein in order to carry out the evident intention of the contracting parties, seems reasonably well settled. In addition to the authorities above cited, see 40 C. J. 1053; 24 Am. Jur. 549-553; Thornton, Oil & Gas (Willis, 5th Ed.) § 157; Carper v. United Fuel Gas Co., 78 W. Va. 433, 89 S. E. 12, L. R. A. 1917A, 171; Jennings v. Southern Carbon Co., 73 W. Va. 215, 80 S. E. 368; Howerton v. Kansas Natural Gas Co., 81 Kan. 553, 106 P. 47; Warfield Nat. Gas Co. v. Allen, 248 Ky. 646, 59 S. W. 2d 534, 91 A. L. R. 890; Freeport Sulphur Co. v. American Sulphur Co., 117 Tex. 439, 6 S. W. 2d 1039, 60 A. L. R. 890; Flewellen v. Simms Oil Co. (Tex. Civ. App.) 134 S. W. 2d 687; Texas Pacific Co. v. Stuard (Tex. Civ. App.) 7 S. W. 2d 878; Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301, 230 S. W. 286, 19 A. L. R. 430, and note.

We have found no support in the adjudicated cases or in the textbooks for the criticism of this foundation for the doctrine found in Merrill's Covenants Implied in Oil & Gas Leases (2d Ed.) §§ 7 and 220, and his contention that such covenants are implied in law. For a discussion of the difference between covenants implied in fact (true contracts based on consent) and those implied in law (quasi-contracts, those not based on consent) see First Nat. Bank v. Matlock, 99 Okla. 150, 226 P. 328, 36 A. L. R. 1088; 13 C. J. pages 240-245; 17 C. J. S. pages 315-325; 6 R. C. L. pages 586-590; 12 Am. Jur. pages 498-505; Williston on Contracts (Rev. Ed.) §§ 3, 619, 620, 668, 670.

We conclude that the implied covenant to protect against drainage is a part of the written lease as fully as if it had been expressly contained therein, is implied in fact and not in law, and that the five-year statute of limitations

is the one that is applicable, and not the three-year statute.

We accordingly hold that plaintiff was entitled to maintain his action, but was precluded from recovering damages for breaches of the implied covenant which occurred more than five years prior to August 2, 1937, the date of the filing of the action.

3. Defendant contends that the evidence produced by plaintiff was not sufficient to justify submitting to the jury the question of whether a reasonably prudent operator would have drilled a well in the northeast corner of plaintiff's land at or shortly after the completion of the offset wells upon the adjoining lease. While it is true that the operator of an oil and gas lease must, as defendant contends, base his decision as to whether a proposed well will be profitable or unprofitable upon the data or information which he has or which is available to him at the time he is required to make his decision, and that the bulk of plaintiff's evidence was concerned with the production of the wells surrounding the northeast corner of his land for approximately ten years, yet there was evidence showing the yearly and monthly production of the adjoining wells, the cost of drilling and the price of oil, and other data, available to defendant, as well as the testimony of a geologist, which tended to prove that a reasonably prudent operator, within a year after the drilling of the adjoining wells, might have reasonably anticipated that a well on the northeast corner of plaintiff's land would be profitable. That the northeast ten acres of plaintiff's land was substantially drained by the offsetting wells is not disputed. The evidence of the amount and value of the oil that the wells produced, and were still producing at the time the action was filed, threw light upon whether defendant's judgment that a well would not be profitable was good or bad, and also showed the probable loss to plaintiff resulting from defendant's decision. Although no operator testified that the available data would have justified a well, we think when the evidence is considered as a whole, it was sufficient to require the submission of this question to the jury.

4. What we have said disposes of defendant's third contention, that the trial court erred in overruling its demurrer to the evidence and motion for directed verdict, and in failing to instruct the jury on the statute of limitations.

5. Defendant's contention that the trial court erred in the admission of evidence is well taken. The trial court, over defendant's objection, permitted plaintiff to introduce records showing the total production of the leases upon which the wells offsetting the northeast corner location were drilled, and the number of wells upon each lease. It was testified that the production of the individual wells offsetting plaintiff's land could not be obtained, as no separate record of them was kept, but all the wells on each lease were run into common tankage, and the lease production recorded as a whole. Before the introduction of the records of the entire leases was permitted, plaintiff should have been required to produce evidence showing whether the production of all the wells on a given lease was reasonably uniform, and defendant given an opportunity to controvert such showing. There was some evidence that the producing formations were not as prolific immediately adjacent to plaintiff's land as they were where the other wells on these leases were drilled, and that the wells nearest plaintiff's land were what are called "edge" wells, being close to the edge of productive area, which was east of plaintiff's lease. Thus it is apparent that the jury could not, from the total production of these leases and the total number of wells thereon, arrive at any other conclusion but that each well on a lease produced the same amount of oil, which, if the production of the offset wells was less than that of the other wells on such lease, was prejudicial to defendant. See Myers v. Shell Petroleum Corp., 153 Kan. 287, 110 P. 2d 810; Corr v. Continental Oil Co., 145 Kan. 78, 64 P. 2d 30, and 147 Kan. 1, 75 P. 2d 212.

Defendant also asserts that the trial court erred in permitting plaintiff to testify to a certain proposal of settlement made by defendant's attorney prior to the filing of this action, and of plaintiff's actions pursuant to such proposal, and its subsequent withdrawal after he had taken such action. We think the admission of this testimony was erroneous, and prejudicial to defendant. The action of plaintiff was not upon a contract of settlement, but for damages. While the evidence was for the purpose of explaining plaintiff's delay in bringing suit, it was calculated to lead the jury to believe that defendant had made a contract with plaintiff which it had thereafter repudiated. There was nothing showing that defendant's attorney could bind it by an agreement, and no agreement was shown with any officer or authorized agent of defendant. The testimony should have been excluded.

6. Defendant contends that the trial court erred in giving certain instructions to the jury. We think the instructions as a whole fairly stated the law applicable to the facts developed by the evidence and the contentions of the parties in all but two particulars: (1) The trial court, as heretofore held, should have limited plaintiff's recovery to that portion of the five years immediately preceding the filing of the action during which the lease was operated by defendant, as plaintiff apparently makes no contention that defendant was liable after it assigned the lease in October, 1934; and (2) the court should have instructed the jury that after arriving at the amount of plaintiff's damages, they should deduct therefrom the amount which plaintiff received by reason of his ownership of interests in the adjoining leases upon which were located the wells which they found drained plaintiff's land, if they found that there was in fact drainage which the drilling of a well in the northeast corner of his land would have prevented. The jury, in view of plaintiff's admitted ownership of interests in the minerals under some of these adjoining tracts, should have estimated, if possible, the proportionate amount of drainage from plaintiff's land by each well which they found drained it because of the failure of defendant to drill in the northeast corner thereof. Then from such amount they should have deducted a portion equivalent to the fractional interest owned by him in the production from such well. Whether this could be calculated with any degree of accuracy would depend upon the evidence, but at least the jury should have been instructed that in arriving at the amount of plaintiff's damage they should take into consideration his ownership in the adjoining lands, and that thereby he was receiving a part of the oil which he claimed to have lost by the drainage.

Reversed, with instructions to grant a new trial and to proceed consistently with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, and ARNOLD, JJ., concur. GIBSON, J., concurs in conclusion. RILEY and DAVISON, JJ., dissent.

_____

GIBSON, J. (concurring specially). I concur in the conclusion reached in the majority opinion, but desire to express an objection to the general application to cases of this character of the rule announced relating to the statute of limitations.

It is held in the majority opinion that the implied covenants injected by the courts into oil and gas mining leases are a part thereof as though expressly contained therein, thus treating such covenants as written contracts within the meaning of subd. 1, sec. 101, O. S. 1931, 12 Okla. Stat. Ann. § 95.

I am unable to agree to the general application of this rule. In my opinion these covenants arise, not as implications of fact and thus within the reasonable contemplation and intention of the parties, but as implications of law injected by the courts wholly as a

matter of equity and justice and not as a matter of conscious contractual understanding. They should be treated strictly as contracts implied in law, not in writing, and within the three-year statute, subd. 2, of the section, supra.

Here the action is for damages for failure of the lessee to protect the leased premises against drainage by offset wells. The majority opinion holds that the implied covenant to so protect the premises is a continuing obligation, and permits recovery of damages accruing during the five years next preceding the commencement of the action. In view of the fact that the defendant insisted on applying the five-year statute instead of the three, it is presumed to have waived the statute as a defense for the first two years of the five-year period. The majority opinion therefore correctly applies the five-year statute, and defendant cannot complain. Hartman Ranch Co. v. Associated Oil Co., 10 Cal. 2d 232, 73 P. 2d 1163. But I think the rule should be specifically limited to this particular case.

I have said above that this covenant is not a part of a written contract within the meaning of the statute, supra. Implied covenants, in order to be a part of the written contract, must arise by implication of fact. Such implication must spring wholly from the intention of the parties as gathered from the language employed in the contract; and such covenants must be necessary to the fulfillment of the purposes of the contract. These covenants are not injected by the courts merely to supply to the parties a measure of wisdom wherein the parties themselves were lacking. Neither will justice nor common fairness alone create an implication of fact upon which to base an implied covenant. 15 C. J. 1212, § 6. As there defined, "an implied covenant is one which is inferred or imputed in law from the words used." In speaking of implied covenants in Belle-Mead Lbr. Co. v. Turnbull, 77 W. Va. 349, 87 S. E. 382, 384, the court said:

"Implied covenants can be justified only on the ground of legal necessity. It is not enough merely to say fairness, prudence, or wisdom demanded it under the cirmumstances. It must be necessary to the operation of the contract, or of words found in it, or effectuation of the intention of the parties, made manifest by their words."

There the court was apparently considering covenants that are implied as a necessary part of the written contract.

And in Wright v. Fidelity & Deposit Co., 176 Okla. 274, 54 P. 2d 1084, we held:

"A contract consists not only of the agreement of the parties expressed in words, but also such covenants as are reasonably implied; and covenants are implied in a contract, first, when so clearly a part of the contract that the court can say the parties considered them so without the necessity of writing them into the contract; or second, where implying such covenants is necessary to carry out the expressed agreements."

It can hardly be said that the parties to the present lease considered the duty to protect boundaries from drainage as so clear and well understood that there was no necessity of mentioning it in the contract. Neither can it be said that the covenant is necessary to carry out the expressed agreement.

The nature of these covenants is discussed in Merrill's Covenants Implied in Oil and Gas Leases (2d Ed.) § 220, as follows:

"The suggestion has been made by an able and incisive student of the subject that the implied covenants are implied in fact rather than in law, that is, that the parties to the lease actually intend that these obligations shall attach to their relationship. While some judicial language may be cited in favor of the proposition, other language and the actual course of decision seem to be against this view. Thus in Sauder v. Mid-Continent Petroleum Corporation, the Supreme Court of the United States said that 'a covenant on respondent's part to continue the work of exploration, development and production is to be implied *from the relation of the parties*

*and the object of the lease; . . .'* The emphasized words stress the factors upon which the law seizes to impose the obligation. They say nothing about the intent of the parties, actual or apparent. They stress, instead, the relationship and the object of the lease."

If the law implies these covenants "from the words used" in the lease, they are implications in fact and are necessary to carry out the express agreement and are to be considered as within the written contract. If they arise wholly as a matter of equity and justice in order to protect the lessor against some unforeseen circumstance or condition not within his contemplation and against which he failed, for lack of wisdom, to protect himself, they are agreements wholly implied in law, and therefore cannot be said to be a part of the written contract as fully as though set out therein. They are created by operation of law to relieve an unfair situation created by the terms of a written contract which in law is binding on the parties as an expression of their full intentions relating to the subject matter.

In Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 P. 610, it was held that an oil and gas lease which failed to expressly define the measure of diligence to be exercised by the lessee in developing the lease "contains a covenant by the lessee, arising by necessary implication from the nature of the lease and the other stipulations therein contained, that, if during the term of the lease oil and gas, one or both, are found in paying quantities, the work of development and production shall be continued with reasonable diligence. . . ." But in my opinion the statement that the lease contained the implied covenant was inaccurate, and was unnecessary to the rule adopted, in that the ensuing circumstances, and not the language of the lease, had brought about an unforeseen condition which the law, even in the face of the legal contractual rights of the parties, would cure in the interest of right and justice by raising an implied promise on the part of the lessee to take suitable action to relieve against the condition.

Otherwise, the lessor would find himself in an unfortunate situation, unable in law to obtain relief against improper operations under a valid lease which fully expressed the intentions of the parties. To say that the implied covenant was contained in the lease would hardly be accurate.

If such covenant is to be implied, not from the expressed intention of the parties, but by law alone, then the lessee against whose interest the covenant wholly operates should be accorded full protection of the statute of limitations applying to actions on implied contracts.