Dear Morgan
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
May a restrictive covenant be amended, pursuant to 11 O.S.Supp. 1999, § 42-106.1[11-42-106.1], to provide for mandatory participationin a homeowner association?
¶ 1 Since 1995, Oklahoma has expressly permitted a restrictive covenant to be amended upon an affirmative vote of a certain percentage of property owners:
 A. Any restrictive covenant on property contained in a residential addition may be amended if:
 1. The restrictive covenant has been in existence for at least ten (10) years and the amendment is approved by the owners of at least seventy percent (70%) of the parcels contained in the addition or the amount specified in the restrictive covenant, whichever is less; or
 2. The restrictive covenant has been in existence for at least fifteen (15) years and the amendment is approved by the owners of at least sixty percent (60%) of the parcels contained in the addition or the amount specified in the restrictive covenant, whichever is less.
 B. Where a preliminary plat has been filed for a residential addition, the requirements of paragraphs 1 and 2 of subsection A of this section shall include all the parcels contained in the preliminary plat.
 C. In the absence of a provision providing for the amendment of the restrictive covenants of a residential addition the requirements of paragraphs 1 and 2 of subsection A of this section shall apply. A thirty-day notice of any meeting called to amend the restrictive covenants shall be provided to the owners of every parcel contained in the addition. Each parcel shall be entitled to one vote.
11 O.S. Supp. 1999, § 42-106.1[11-42-106.1].
 Power to Amend Confined to Existing Restrictive Covenants
¶ 2 Title 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] provides that a restrictive covenant may be amended, but it does not define the term "amend." When the Legislature has not defined a term, 25O.S. 1991, § 1[25-1] requires that the term be given its plain and ordinary meaning. See id. Webster's defines "amend" to mean "to change or alter in any way esp[ecially] in phraseology." Webster's Third New International Dictionary 68 (3d. ed. 1993). Based on the plain and ordinary meaning of the term "amend," the Legislature appears to have intended to confine § 42-106.1 to efforts to change or alter existing restrictive covenants. Therefore, as a preliminary matter, 11 O.S. Supp. 1999, §42-106.1[11-42-106.1] does not permit homeowners to add a new restrictive covenant pertaining to a homeowner association if the homeowner association is not already referenced in an existing restrictive covenant.
 Overview of Homeowner Associations
¶ 3 Homeowner associations are created for a variety of purposes, which may include "management, maintenance, preservation and control of commonly owned areas or any portion of or interest in them, and/or . . . enforcing all mutual, common or reciprocal interests in or restrictions upon all or portions of such separately owned lots, parcels, or areas, or both." 60O.S. 1991, § 852[60-852](A). Homeowner associations may be referenced in a restrictive covenant[1] and will typically specify whether such membership is voluntary or mandatory.
¶ 4 Homeowner associations are supported by fees paid by association members. A homeowner association can enforce its restrictive covenants by filing liens and seeking redress through Oklahoma district courts. See 60 O.S. 1991, §§ 852[60-852](C), 856. If membership is mandatory, and if a homeowner fails to pay the mandatory homeowner association dues, then the homeowner association could file a lien against the homeowner's property in district court. See id. Consequently, the lien would operate as a cloud upon the homeowner's title until the homeowner association dues were paid.
¶ 5 Your inquiry involves residential property owners wishing to amend their addition's restrictive covenants to provide for mandatory, as opposed to voluntary, participation in a homeowner association. You have asked whether it is constitutional for property owners to use 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] to amend their restrictive covenants to require mandatory participation in a homeowner association.
 Constitutional Question
¶ 6 Both the federal and state constitutions protect citizens' property against unlawful takings. The United States Constitution prohibits governmental taking of property without due process of law:
 No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV, § 1.
¶ 7 The Oklahoma Constitution protects private property against taking by another person without compensation or consent of the property owner. The Oklahoma Constitution provides that:
 No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law.
Okla. Const. art. II, § 23.
¶ 8 Similarly, Article II, § 24 of the Oklahoma Constitution prohibits governmental taking of private property without compensation:
 Private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken.
Id.
¶ 9 Finally, Oklahoma Constitution Article V, § 54 prohibits the Legislature from statutorily extinguishing an already existing property interest:
 The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute.
Id.
 Restrictive Covenants Confer Vested Rights
¶ 10 Additionally, restrictive covenants confer property owners with certain vested rights, including the right to know the method by which their restrictive covenants can be amended. SeeIn Re Wallace's Fourth Southmoor Addition, 874 P.2d 818, 821
(Okla.Ct.App. 1994). In Re Wallace involved several property owners seeking to invalidate amendments made by a homeowner association without unanimous consent. (The restrictive covenant permitted amendments to the restrictive covenants if approved by the majority of homeowners, but such amendments could only occur every ten years.) Invalidating the amendments, the Court of Appeals concluded that the homeowner association's attempt to amend the restrictive covenants within the ten-year period, and without the unanimous consent of the homeowners, clearly violated the vested rights conferred upon the homeowners:
 It must not be forgotten that while a "restrictive covenant" forbids or requires certain uses of the real property which it covers, it also confers vested rights in those owners who desire to own property where the subject uses are either required or forbidden. One of the vested rights is the method required to amend, change, or abolish the covenant.
Id. at 821.
¶ 11 In light of these constitutional considerations, it must be remembered that statutes are presumed constitutional, and courts favor interpretations supporting a statute's constitutionality:
 In considering a statute's constitutionality, courts are guided by well established principles. A heavy burden is cast on those challenging a legislative enactment to show its unconstitutionality and every presumption is to be indulged in favor of the constitutionality of a statute.
Fent v. Oklahoma Capitol Improvement Auth., 984 P.2d 200, 204
(Okla. 1999) (citation omitted).
¶ 12 Restrictive covenants are contractual in nature,[2]
and contracts generally may not be amended absent the consent of all parties. See id. The Legislature, however, can create mandatory terms to be contained in contracts executed in Oklahoma. Title 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] exemplifies such legislative prerogative, providing a method by which property owners may amend their restrictive covenants without the consent of all property owners within the addition. The statute is to be presumed constitutional.
 Analysis
¶ 13 While not presenting any constitutional infirmity on its face, 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] may be unconstitutionally applied, depending on when the restrictive covenants were enacted. Title 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] became effective November 1, 1995. Therefore, application of 11 O.S. Supp. 1999,§ 42-106.1[11-42-106.1] to change a restrictive covenant from voluntary to mandatory participation is permissible if the restrictive covenant was adopted on or after November 1, 1995, the effective date of 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1].
¶ 14 Conversely, 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] would be unconstitutionally applied to restrictive covenants existing prior to the statute's effective date of November 1, 1995, if
such action constitutes a "taking" prohibited by the 14th
Amendment of the United States Constitution, and the Oklahoma Constitution, Article II, §§ 23 and 24, and Article V, § 54. For example, if the existing restrictive covenant requires unanimous consent of the property owners, then it would be unconstitutional for property owners to use 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] to amend their restrictive covenants without unanimous consent. To the extent that a homeowner association utilizes the district court to enforce such a restrictive covenant, amended without the consent of the property owner, such an action could be construed to violate the 14th Amendment of the United States Constitution, and Article II, §§ 23 and 24, and Article V, § 54
of the Oklahoma Constitution. See also In re Wallace.
 Conclusion
¶ 15 Title 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] permits restrictive covenants to be amended by affirmative vote of a certain percentage of property owners. However, the statute can only be used to amend existing restrictive covenants, not add new restrictive covenants. Property owners can utilize 11 O.S. Supp.1999, § 42-106.1[11-42-106.1] to amend existing restrictive covenants to require mandatory homeowner association membership if the restrictive covenants were created after November 1, 1995. Conversely, property owners may not use 11 O.S. Supp. 1999, §42-106.1[11-42-106.1] to amend restrictive covenants to require mandatory homeowner association membership if the covenants existed prior to November 1, 1995, and if such an amendment would result in a private or governmental taking prohibited by the 14th
Amendment to the United States Constitution, and the Oklahoma Constitution, Article II, §§ 23, 24, and Article V, § 54.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Title 11 O.S. Supp. 1999, § 42-106.1[11-42-106.1] permits arestrictive covenant to be amended by affirmative vote of acertain percentage of property owners. However, the statute canonly be used to amend an existing restrictive covenant, not add anew restrictive covenant.
 2. Property owners may utilize 11 O.S. Supp. 1999, §42-106.1[11-42-106.1] to amend an existing restrictive covenant to requiremandatory homeowner association membership if the restrictivecovenant was created on or after November 1, 1995.
 3. Conversely, property owners may not use 11 O.S. Supp.1999, § 42-106.1[11-42-106.1] to amend a restrictive covenant to requiremandatory homeowner association membership if the restrictivecovenant existed prior to November 1, 1995, and if such anamendment would result in a private or governmental takingprohibited by the 14th Amendment of the United StatesConstitution, and the Oklahoma Constitution, Article II, §§ 23,24, and Article V, § 54.
W.A. DREW EDMONDSON Attorney General of Oklahoma
JOHN A. MAISCH Assistant Attorney General
[1] See, e.g., Holiday Pines Property Owners Ass'n v.Wetherington, 596 So.2d. 84, 86 (Fla.Dist.Ct.App. 1992).
[2] See Indian Territory Illuminating Oil Co. v. Rosamond,120 P.2d 349, 353-54 (Okla. 1941).