Gulf Pipe Line Co. et al. v. Pawnee-Tulsa Petroleum Co. et al.

## GULF PIPE LINE CO. *et al.* v. PAWNEE-TULSA PETROLEUM CO. *et al.*

No. 2152.    Opinion Filed October 15, 1912.

(127 Pac. 252.)

**MINES AND MINERALS—Oil and Gas Lease—Construction—Rights of Lessee—Place of Drilling.**  The lessee of an oil and gas mining lease cannot select a place and there drill an oil or gas well, if the particular place selected will endanger the property and lives of other people who are lawfully using the surface, when the lessee can drill his well at another place equally convenient to him, and equally advantageous to him, which will not endanger the property and lives of those lawfully upon the surface.

(Syllabus by Ames, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by the Gulf Pipe Line Company, a corporation, and the Gulf Pipe Line Company of Oklahoma, a corporation, plaintiffs below, plaintiffs in error, against the Pawnee-Tulsa Petroleum Company, a corporation, .Colonel E. Mays, Frank Mays, and G. F. Bartlett, defendants below, defendants in error, to restrain the boring of an oil and gas well in dangerous proximity to plaintiffs' property.  From a decree sustaining a motion to dissolve a temporary injunction, the plaintiffs bring error.  Reversed and remanded.

*F. C. Proctor, D. Edward Greer,* and *James B. Diggs,* for plaintiffs in error.

*Biddison & Campbell,* for defendants in error.

Opinion by AMES, C.   A motion to dissolve the temporary injunction was heard upon the petition and a stipulation as to the title of the parties.  As disclosed by the stipulation and the petition, the facts are as follows:  The defendants hold an oil and gas mining lease upon 80 acres of land, including that of the plaintiffs.  After their lease was executed, the plaintiffs pur-

chased from the owners a small portion of the 80-acre tract, but subject to the lease of the defendants. The portion acquired by the plaintiffs is approximately 470 by 677 feet, and upon it the plaintiffs, with the knowledge of the defendants, and without objection by them, erected a pumping station. The business of the plaintiffs is the collection of oil from various oil fields of Oklahoma, the assembling of the same at this pumping station, and the transportation from thence to the Gulf. On this tract the plaintiffs erected boiler houses, pumping houses, fuel tanks, water tanks, storerooms, machine shops, and various and sundry other improvements, of the aggregate value of about $39,000. Amongst other improvements is a manifold pit, which is an open space into which all lines conveying oil to and from said pumping stations enter, and which is designed to permit the escape of the inflammable and explosive gases incident to the transportation of oil, so that the danger of explosions may be avoided. In operating their pumping station, the plaintiffs employ about 28 persons, who are constantly engaged in and about this manifold pit and the buildings and grounds of the pumping station. The defendants, under their oil and gas mining lease, were about to bore a well immediately upon the line of plaintiffs' land, and within a few feet of the manifold pit. Before commencing to bore, the defendants had offered their leasehold interest to the plaintiffs at a price much beyond its real value; but the plaintiffs had refused to buy. The plaintiffs informed the defendants of the great danger which would result to the plaintiffs' property from boring this well, of the probability of an explosion on account of the escape of gases from the manifold pit, all of which the defendants admitted to be true; but the defendants stood upon their naked right to drill where they pleased. There were other places adjacent to the property of the defendants upon which the well could be bored with safety to the property of the plaintiffs and their employees, and with full protection to the rights of the defendants to take the oil and gas from their mining lease. But, notwithstanding these facts, the defendants proposed to bore at this place of danger, unless the plaintiffs would buy their lease at a price much greater than its value.

In addition to these facts, it is alleged in the petition:

"By reason of said facts, and by reason of said knowledge on the part of the said Colonel E. Mays and the Pawnee-Tulsa Petroleum Company of the dangerous and hazardous character of undertaking to drill in said oil well at the point selected, and declining to drill in the same at a point equally accessible and as advantageous to the legitimate interests of said company; these plaintiffs say that the purpose and design of the said defendants in drilling and sinking a well in at the point selected for such purpose is not with the honest and *bona fide* design of developing said lands for oil and gas mining purposes, protecting the lines thereof, and extracting oil and gas therefrom, but is made with the design, intention, and purpose of endangering said pumping station, the lives of the employees therein, and the value of plaintiffs' said oil lines, thinking thereby that plaintiffs, or one of them, will purchase their said oil and gas mining lease on said land at a value placed thereon by the Pawnee-Tulsa Petroleum Company without regard to its real value, in order to save the property of these plaintiffs and the lives and safety of the employees of the Gulf Pipe Line Company of Oklahoma from the danger incident to the drilling and sinking of such oil and gas mining well."

The question involved, therefore, is whether the defendants can arbitrarily select a place at which to bore a well, which will probably produce great damage to the property of the plaintiffs and jeopardize the lives of their employees, when such place is not necessary to the full and complete exercise of the rights of the defendants to take oil and gas from the land. The question involved is not the right of the defendants to take oil and gas pursuant to their lease, but the right to arbitrarily select a place from which to take it, which would be of no advantage to them, but of great detriment to the owner of a small portion of the surface.

It is well settled that the holder of a mining lease must protect the surface of the ground in which the mine is located. *Williams v. Gibson,* 84 Ala. 228, 4 South. 350, 5 Am. St. Rep. 368; *Jones v. Wagoner,* 66 Pa. 429, 5 Am. Rep. 385, and the cases cited in the note to *Griffin v. Fairmont Coal Co.,* at page 1115 of 2 L. R. A. (N. S.). These cases rest upon the principle that an owner of property must use it in such a reasonable way as not

to endanger others in the exercise of equal rights. This same principle is announced by this court in *C., R. I. & P. Ry. Co. v. Groves,* 20 Okla. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802, which deals with the flow of surface waters. At page 111 of 20 Okla., 93 Pac. 759 (22 L. R. A. [N. S.] 802), it is said:

"Practically all of the common-law courts agree that the surface water flowing naturally or falling upon the soil may be diverted in its course, and even thrown back upon the dominant estate whence it came. But is this right absolute at the will of the lower proprietor, or must such exercise be reasonable, for the proper purposes, and with due care to inflict injury only when it is necessary? The question of good faith and the manner of doing it are necessarily involved in determining whether or not such right may be exercised. When necessary, and with due care and regard as to the rights of others, although injury may accompany its exercise, under the common law there is no relief. The doctrine that the right may not be exercised wantonly, unnecessarily, or carelessly does not rest upon the civil law so much as upon the common law."

Applying this principle to the case at bar, it follows that the injunction should not have been dissolved.

The defendants hold a lease on the entire 80 acres, by which they have the right to drill for oil and gas. The demurrer admits that they can drill as well at other places close by, which will do no harm to the property of the plaintiffs and the lives of their employees. Having the right to drill anywhere, and the right to occupy the surface not being conveyed to them, but reserved to the owners, it follows that they must exercise their right to drill with due regard to the rights of the owners of the surface, and that where they can fully enjoy their own rights without injury to others they should not be allowed, out of the spirit of wantonness or of blackmail, to jeopardize the right.

The case should be reversed and remanded.

By the Court: It is so ordered.