## MAGNOLIA PETROLEUM CO. v. HOWARD.

No. 25785.   Feb. 21, 1938.

102

Anglin & Stevenson, Blakeney & Ambrister, and Vernon Roberts, for plaintiff in error.

W. W. Pryor and Hugh M. Sandlin, for defendant in error.

RILEY, J. This is an appeal from a verdict and judgment in an action for damages to land and livestock alleged to have resulted from the escape of salt water and oil from oil wells operated by defendant and located upon land owned by plaintiff. Plaintiff owned 280 acres of land, but the oil wells here involved were located upon a 40-acre tract adjoining the main body of plaintiff's land. Damage to this particular 40 acres only is claimed.

The petition is in two counts. The first count is for damages to the land. In the second count plaintiff claimed damage because of the loss of two of her cows, which she alleged died after they had become mired down in salt water pits or basins which defendants had carelessly and negligently failed to fence.

The answer of defendant is by general denial; a plea that the land, if damaged, was damaged before plaintiff purchased it, and a plea of the statute of limitation.

The cause was tried to a jury, resulting in a general verdict for plaintiff in the sum of $300. Judgment was entered on the verdict, and defendant appeals.

The first cause of action is based upon alleged permanent damage to land. The record discloses that the wells had been in operation sometime when plaintiff purchased the land; that defendant was operating under an oil and gas lease executed by a former owner.

Defendant contends that, since it was in possession under a valid oil and gas lease, plaintiff should not recover because she did not show that defendant was negligent or that damage was done to some portion of the land not reasonably necessary for the development of the land for oil and gas purposes.

Plaintiff in her petition alleged that the basins or pits for salt water and base sediment maintained by defendant were "carelessly and negligently" permitted to break allowing deleterious substances to escape and flow down into a small creek rendering the water therein unfit for stock and destroying trees, one of which was a bearing pecan tree, about two feet in diameter; that prior to the excavation of said tanks or pits, and within the past two years, defendant had turned its salt water out over the premises of plaintiff and wholly ruined, destroyed, and made barren approximately two acres of plaintiff's land.

There was evidence tending to prove this allegation. There is no direct evidence that it was not reasonably necessary to so use the land in the proper development for oil and gas. But from all the evidence the jury could infer that it was not reasonably necessary to so use the land.

Defendant contends that under the rule announced in Marland Oil Co. v. Hubbard, 168 Okla. 518, 34 P.2d 278, and Tidal Oil Co. v. Pease, 153 Okla. 137, 5 P.2d 389, it was incumbent upon plaintiff to show that defendant was guilty of negligence, or that salt water or oil was permitted to flow over some portion of the land not reasonably necessary for the development of the land for oil and gas purposes.

Tidal Oil Co. v. Pease, supra, is not applicable. There the court had under consideration a case where the oil and gas operator owned the land in fee. All on the point that was there held was that section 7969, C. O. S. 1921 (section 11580, O. S. 1931), does not prevent the operator from flowing salt water over the surface of his own land, so long as it was confined to his own land, or to land leased for that specific purpose. It was therein held that an operator may lease land of another for the specific purpose of taking care of salt water and other waste products from his oil and gas wells.

Marland Oil Co. v. Hubbard, supra, appears to cast the burden upon the owner to prove that land claimed to have been damaged by flow of salt water was not reasonably necessary for oil and gas development of the leased land. That decision was overruled in the recent case of Pure Oil Co. v. Chisholm, 181 Okla. 1, 75 P.2d 464.

The true rule is that under the ordinary oil and gas lease, the lessee, in developing the premises in the production of oil and gas, is entitled to the possession and use of all that part of the leased premises which is reasonably necessary in producing and saving the oil and gas. This extends to space required upon which to erect tanks or dig pits necessary to store or confine such refuse matter as may come from the wells on the leased premises in the course of or-

dinary prudent operations. But where the lessee makes his selection of the place where such works are to be constructed and constructs ponds, tanks, or other receptacles in which to confine such refuse matter, and runs the same therein, and permits the same to escape therefrom and flow over the surface of other parts of the land, he may be required to respond to the owner for damage resulting therefrom, this because of positive statute. Where such refuse matter is permitted to flow over the surface of the land, it is our view that the operator is liable unless he affirmatively establishes that in good faith the resulting damage was a necessary incident to the disposal of the refuse matter, and unless the producer absolves himself from the application of the statute by a plea and proof of necessity, he must answer in damages, and whether he has done so is a question of fact for the jury. Defendant's contention on this question cannot be sustained.

But the judgment must be reversed on other grounds. The trial court failed entirely to instruct the jury on the measure of damages to the land. In addition thereto, the instructions given would have permitted a recovery up to $600 as damages to plaintiff's land. The most that was claimed on that account was $500. Furthermore, the uncontradicted evidence is that the land was damaged to some extent by the flow of salt water over the surface thereof, at the time plaintiff purchased it. This is shown by the testimony of Lee Howard, the principal witness for plaintiff. He acted as plaintiff's agent in purchasing the land and testified at the trial. When questioned as to whether any part of the land had been overflowed with salt water when he bought it, and if so, how much, he answered, "I judge one-third, or something like that, had been overflowed when I bought it."

As to the second cause of action, defendant contends that under the rule laid down in Peters Petroleum Corp. v. Alred, 156 Okla. 249, 10 P.2d 705, the defendant was not required as a matter of law to fence its slush pits, necessary for all operators to have in drilling an oil and gas well.

The facts in the Peters Petroleum Case were different from the instant case. Therein the plaintiff was not the owner of the land upon which the wells were being operated. He did not have an agricultural or grazing lease thereon. His rights were wholly upon adjoining land. Under the law applicable in that case, all that was held in this connection was that in counties where the so-called "herd law" was in effect, the operator of an oil and gas well was not guilty of negligence in failing to fence the premises upon which the wells were being operated so as to prevent cattle coming thereon from the lands of adjacent owners.

The question of the duty to fence as applied to the owner of the land leased for oil and gas purposes was not there involved. However, there is no statutory duty to fence slush pits, nor is it negligence per se to fail to so fence such a pit. Here involved are reciprocal rights that might be the subject of contract. The mere fact that a cow or cows were lost by getting into a slush pit does not establish negligence on the part of the lessee-operator for oil and gas.

On account of the errors pointed out, the judgment is reversed and the cause is remanded for a new trial.

Plaintiff was permitted to introduce evidence over the objection of defendant as to the value of the land before it was injured in any way by salt water.

Evidence was given as to the value of the land at the time of the trial.

It is apparent that under such evidence the jury might have taken into consideration difference in value caused by salt water and other waste matter deposited on the surface of the land prior to the time plaintiff purchased it. The evidence should have been confined to the value of the land at the time plaintiff purchased it, in the condition it was at that time, and its value at the time the action was commenced. The difference, if any, attributable wholly to the additional flow of salt water and oil thereon after plaintiff purchased it, would be the proper measure of damages. Evidence as to the value of the land before plaintiff purchased it should have been excluded.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS, CORN, HURST, and DAVISON, JJ., concur. GIBSON, J., dissents.