**DAVIS OIL COMPANY, Appellant,**

v.

**Anna Lee CLOUD, Appellee.**

No. 61473.

Supreme Court of Oklahoma.

Nov. 18, 1986.

As Corrected Jan. 13, 1989.

Rehearing Denied Jan. 17, 1989.

Dissenting Opinion On Rehearing
Jan. 17, 1989.

Moricoli, Wilson, Harris & Dubberstein
by John C. Moricoli, Jr., Michael G. Harris

and Dale E. Cottingham, Oklahoma City, for appellant.

Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks by Clyde Stipe, McAlester, for appellee.

LAVENDER, Justice:

Appellant, Davis Oil Company, the holder of leasehold interests covering some 240 acres in a certain Section 9 in Haskell County, Oklahoma, proposed to drill a well to obtain oil and gas in the center of the NW/4 of the NW/4 of the Section.[1] The surface of the land to be affected by the proposed well location was divided in ownership. The North ½ of the 40 acre surface plot was owned by Stanley Wilson. The South ½ of the property was owned by appellee, Anna Lee Cloud.

Appellant entered into negotiations with the surface owners regarding a surface damages agreement in accordance with the procedure set out in the recently enacted legislation regarding surface damages resulting from oil and gas drilling operations (the surface damages act).[2] Appellant and Stanley Wilson were able to arrive at a satisfactory agreement. Appellant and appellee were not able to agree to terms.

Following the failure of negotiations between appellant and appellee, appellant took the next step under the surface damages legislation and petitioned the district court for the appointment of appraisers to assess damages to the surface estate.[3] In petitioning for appraisement, appellant also raised an objection to the constitutionality of the application of the surface damages legislation to this case.

Appraisers were appointed under the petition and instructed by the district court. The appraisers awarded the sum of $2500 for damages to appellee's surface estate. On return of this report appellee filed a demand for jury trial as provided under 52 O.S.Supp.1982 § 318.5(F).

Prior to the time this matter came on for jury trial the well in question was completed as a dry hole and was subsequently plugged and abandoned. The drilling pad and access road which had been constructed in conjunction with the well were bulldozed out. Most of the materials which had been brought in in connection with these constructions were moved onto Stanley Wilson's land to form a high place for his livestock in wet weather.

At the trial to the jury, appellee, without objection, presented evidence regarding damages from the inconvenience of broken water lines resulting from appellant's operations in building its access road. Appellee also presented other evidence of inconvenience coming from appellant's running of twenty-four hour a day operations in site preparation, which also resulted in occasionally blocking her immediate access to the highway. The major evidence of damages presented by appellee, however, concerned the diminution in the value of her land. This diminution was attributed to the materials brought in to construct the well pad, which had been leveled out on her property, and a laking effect which subsequently occurred on her property. The cause of the laking effect was attributed to the pad and road materials which were placed on the Wilson property and which interfered with appellee's drainage. Appellee presented evidence that her property was a high quality hayfield, and that appellant's activities had considerably interfered with the use of the property in this capacity.

The trial court instructed the jury that the measure of damages which they should use in the case was the dimunition in fair market value of appellee's property. They were also instructed that they could consider the inconvenience suffered in the actual

1. Davis took the leasehold interests by assignment dated April 28, 1982.

2. 52 O.S.Supp.1982 §§ 318.2 through 318.9, operative July 11, 1982.

3. 52 O.S.Supp.1982 § 318.5(A).

use of the land by appellant and actual damages to growing crops as those factors affected the market value of the tract.

The jury assessed appellee's damages at $15,000 and returned a verdict in that amount. Appellant moved for judgment notwithstanding the verdict. This motion was denied and judgment entered on the verdict. Appellant now challenges that judgment.

### I.

Three of the five propositions of error presented by appellant on appeal are based on its assertion that it was constitutionally improper for the trial court to instruct the jury that dimunition in market value of appellee's property was a proper standard for assessing damages. Appellant argues that the proper standard to be applied was the standard in effect prior to the passage of the surface damages legislation. Under that standard an oil and gas operator would be held liable for surface damages only if such damages resulted from wanton or negligent operations or if the operations affected a more than reasonable area of the surface.[4]

The legal principles upon which this freedom from liability for "reasonable" surface operations was founded were expressed by this Court in the case of *Marland Oil Co. v. Hubbard:*[5]

The rule as to rights and obligations arising under an oil and gas lease is stated in Mills-Willingham Law of Oil and Gas, § 163, p. 252, as follows: "The grant, or reservation, of the right to operate for oil and gas carries with it, as an incident, the right to the use of the premises to an extent reasonably necessary for that purpose. Consequently, the damage to the soil, trees, or crops, upon the land, which is incidental to and the result of such reasonable operations, is damnum absque injuria, and no recovery can be had therefor against the operator. The lessee, however, is liable for damages to the surface resulting from the negligent, as distinguished, from reasonable, use. Most modern leases, however, provided that the lessee shall pay for all damages to the crops, etc."—citing *Pulaski Oil Co. v. Conner,* 62 Okl. 211, 162 P. 464, 466, L.R.A. 1917C, 1190, wherein this court said: "While an oil and gas lease carries within its implications, if not within its expression, such rights as to the surface as may be necessarily incident to performance of the objects of the contract, yet it is well settled that the implications go no further, and that the holder of a mining or oil and gas lease must protect the surface of the ground in so far as such incident necessity does not exist." See, also, *Cosden Oil & Gas Co. v. Hickman et al.,* 114 Okl. 86, 243 P. 226; *Sanders v. Davis,* 79 Okl. 253, 192 P. 694, and *Rennie v. Red Star Oil Co.,* 78 Okl. 208, 190 P. 391.

The genesis of these principles in turn comes from the holding that the right to go upon land to prospect for and take oil and gas is a proper subject of ownership which may be granted or reserved.[6] As the purpose of a mineral grant or lease is to operate for the recovery of gas or oil, it is necessarily implied that the right to enter the premises is included in that grant. However, the question before us now is not whether that right, which is in the nature of a property right, continues in existence. The question before us now is whether the standard of liability for damages occurring to the surface estate as a result of the exercise of that right may be changed.

---

**4.** *Wilcox Oil Co. v. Lawson,* 341 P.2d 591 (Okla. 1959); *Cities Service Oil Co. v. Dacus,* 325 P.2d 1035 (Okla.1958); *Wilcox Oil Co. v. Lawson,* 301 P.2d 686 (Okla.1956).

**5.** 168 Okla. 518, 34 P.2d 278 (1934), overruled on other grounds in *Pure Oil Co. v. Chisolm,* 181 Okla. 618, 75 P.2d 464 (1936). See discussion in *Cities Service Oil Co. v. Dacus,* 325 P.2d at 1036.

**6.** *Stone v. Texoma Production Co.,* 336 P.2d 1099 (Okla.1959).

In the *Marland Oil Co.*[7] case we stated that damages flowing from reasonable use of the surface constituted an instance of *damnum absque injuria*. *Black's Law Dictionary,*[8] defines this term as meaning:

> Loss, hurt, or harm without injury in the legal sense; that is, without such breach of duty as is redressible by an action. A loss which does not give rise to an action for damages against the person causing it.

Thus the principles espoused in *Marland* indicates that, since the purpose of oil and gas operations necessarily entails entry onto the surface estate as an incident of the right to so enter the operator would not be held liable for damages resulting from "reasonable" use of the surface.

Appellant's arguments in the present case are premised on the assertions that this standard of liability constitutes a right in the property or that it constitutes a contract right vested by the mineral lease or mineral conveyance. We do not agree. The property right in question is the right to go on the property in pursuit of the oil and gas. The limitation on the operator's liability in the exercise of that right is to be viewed as no more than a defense which has been provided to the operator by operation of the common law in actions for damages by the surface estate holder. The United States Supreme Court, in addressing a claim of denial of due process stemming from the imposition of liability limits on a potential negligence action, stated:[9]

> Our cases have clearly established that "[a] person has no property, no vested interest, in any rule of the common law." *Second Employers' Liability Cases,* 223 U.S. 1, 50, 32 S.Ct. 169, 175, 56 L.Ed. 327

(1912), quoting *Munn v. Illinois,* 94 U.S. [4 OTTO] 113, 134, 24 L.Ed. 77 (1877). The "Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object," *Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929), despite the fact that "otherwise settled expectations" may be upset thereby. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). See also *Arizona Employers' Liability Cases,* 250 U.S. 400, 419–422, 39 S.Ct. 553, 555–556, 63 L.Ed. 1058 (1919). Indeed, statutes limiting liability are relatively commonplace and have consistently been enforced by the courts. See, e.g., *Silver v. Silver,* supra (automobile guest statute); *Providence & New York S.S. Co. v. Hill Mfg. Co.,* 109 U.S. 578, 3 S.Ct. 379, 27 L.Ed. 1038 (1883) (limitation of vessel owner's liability); *Indemnity Ins. Co. of North America v. Pan American Airways,* 58 F.Supp. 338 (S.D.N.Y. 1944) (Warsaw Convention limitation on recovery for injuries suffered during international air travel). Cf. *Thomason v. Sanchez,* 539 F.2d 955 (C.A.3 1976) (Federal Driver's Act).

That Court has similarly held that a defendant has no vested right in a rule allowing a defense provided by common law, such as the defense of contributory negligence, as such a defense is susceptible to being taken away altogether.[10]

■ We thus find that the standard of liability for damages to the surface estate flowing from the exercise of the mineral estate holder's right to enter and use the land was a subject clearly susceptible to modification by exercise of the state's po-

---

**7.** Note 4, supra.

**8.** 354 (5th ed. 1979).

**9.** *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 88, 98 S.Ct. 2620, 2638, 57 L.Ed.2d 595 (1978) (footnote 32 of the opinion). And see also *Morris v. Hotel Riviera, Inc.,* 704 F.2d 1113 (9th Cir.1983); *Bazdar v.*

*Koppers Co. Inc.,* 524 F.Supp. 1194 (N.D.Ohio 1981).

**10.** *Chicago, R.I. & P.R. Co. v. Cole,* 251 U.S. 54, 40 S.Ct. 68, 64 L.Ed. 133 (1919), citing *Bowersock v. Smith,* 243 U.S. 29, 37 S.Ct. 371, 61 L.Ed. 572 (1917).

lice power.[11]

In the case of *Anderson-Prichard Oil Corp. v. Corporation Commission*,[12] we quoted the following observation with approval:

"All property is held subject to the valid exercise of the police power; nor are regulations unconstitutional merely because they operate as a restraint upon private rights of person or property or will result in loss to individuals. The infliction of such loss is not a deprivation of property without due process of law; the exertion of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law."

In *Anderson* we went on to state:[13]

. In 2 Constitutional Limitations (8th Ed.), pages 1319–1320, it is said: "The legislature may also regulate and restrict the use and enjoyment of landowners of the natural resources of the state such as subterranean waters, gas, oil, and timber, so as to protect them from waste and prevent the infringement of the rights of others. Such legislation does not infringe the constitutional inhibitions against the taking of property without due process of law, denial of equal protection of the laws, or taking property without just compensation."

The subject of the challenge in *Anderson* was an order of the Corporation Commission entered pursuant to legislation authorizing the Commission to act to ensure that drainage from a common source of supply of natural gas was done on a proportionate basis. The legislation was found to be a proper exercise of the state's police power as it protected against waste of natural resources and protected the rights of owners of those resources against infringement by others. In the present case, instead of dealing with correlative rights of ownership in the same natural resources, the Legislature has acted to balance conflicting rights between owners of different resources.

It cannot be said that the surface of the land constitutes a less vital resource to the State of Oklahoma than does the mineral wealth which underlies it. The surface supports development for business, industrial and residential purposes. It also supports our vital agricultural industry. The passage of the surface damages act guarantees that the development of one industry is not undertaken at the expense of another when the vitality of both is of great consequence to the well-being of our economy. In times when both the agricultural and oil and gas segments of our economy are suffering it is especially important that such legislation is enforced.

■ We thus find no merit in appellant's assertions that the application of the surface damages act to existing leases serves no legitimate public interest.

In *Nebbia v. New York*,[14] the Court stated:

The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or

---

**11.** As we read the cases previously cited to state that one may not maintain a claim of vested contractual rights in a common law standard of liability where the standard is claimed to be impliedly contained in a contract we read the provisions of 52 O.S.Supp.1982 § 318.7 as only applying to contracts in which damage provision standards are specifically set forth in the contract.

**12.** 205 Okla. 672, 241 P.2d 363, 372 (1951), app. dismissed 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 698, quoting from *Lombardo v. City of Dallas*, 124 Tex. 1, 73 S.W.2d 475 (1934).

**13.** Id. 241 P.2d at 372.

**14.** 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934).

capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. . . .

Our review of the challenged legislation in light of these standards impels a finding of validity. The act, as it sets forth a mechanism for determining actual damages to the surface estate is not unreasonable in its application. As the act has application to all instances where the mineral and surface estates have been severed, it is not arbitrary nor capricious in its effect. We further find that the means selected of awarding actual damages to the surface estate holder bears a real and substantial relation to the object of balancing the interests of the various estates.

## II.

Appellant's fourth proposition of error argues that the judgment should be reversed on the basis that evidence of personal inconvenience to appellee caused by appellant's operations was allowed to be introduced at trial. A review of the trial transcript, however, reveals that no objection to such evidence was presented at trial. Any error occurring from the admission of this evidence was accordingly waived.[15]

Appellant's contention that it was prejudiced by the admission of such evidence is belied by the fact that the award given by the jury was less than the amounts testified to as actual dimunition in value of appellee's surface estate by several of appellee's witnesses.[16]

## III.

Appellant's final proposition of error appears to combine assertions that it was improper for the trial court to instruct the jury that it might consider elements of inconvenience as damages in this case with the assertion that the trial court failed to

properly instruct the jury on elements of nuisance and negligence.

The trial court's instruction which appears to be under attack is Instruction Number 6, which reads:

Factors which you may consider in determining damages include the following, if shown by a preponderance of the evidence:

1. The location or site of the drilling operations.

2. The quality and value of the land used or disturbed by said drilling operations.

3. Incidental features resulting from said drilling operations which may affect convenient use and further enjoyment.

4. Inconvenience suffered in actual use of the land by OPERATOR.

5. Whether the damages, if any, are temporary or permanent in nature.

6. Changes in physical condition of the tract.

7. Irregularity of shape and reduction, or denial, of access.

8. The destruction, if any, of native grasses, and/or growing crops, if any, caused by drilling operations.

These are not to be considered as individual items of damages, but as they may, in your opinion affect the fair market value of the tract after the drilling operations in this case.

■ Appellant's argument concerning the impropriety of allowing items of inconvenience to be considered as damages appears to be aimed at factor No. 4. However, the instruction, read as a whole, clearly indicates that any evidence relating to this factor, as to all the other enumerated factors, must be considered solely as it related to the value of the surface estate. As the issue in the case was the determination of the damage to the surface estate as measured by the diminution of the fair

**15.** *Oklahoma Natural Gas Co. v. Harlan,* 206 Okla. 413, 243 P.2d 730 (1952); *Bauman v. International Harvester Co.,* 191 Okla. 392, 130 P.2d 287 (1942).

**16.** See *Payne v. McRay Brothers,* 446 P.2d 49 (Okla.1968).

market value of the property this instruction properly presents that issue for the jury. Accordingly we find no error in the giving of this instruction.[17]

Appellant's arguments concerning the elements of nuisance and negligence are difficult to grasp as neither theory was a part of the present case. Oklahoma has traditionally allowed inconvenience in the use of land resulting from a condemnor's actions to be considered in assessing damages to the condemnee.[18] As the nature of the action under the surface damages act clearly partakes of the nature of a condemnation action,[19] such an element of inconvenience, if present, would properly be considered. Inconvenience in the use of the land resulting from appellant's operations remains a viable consideration in this action. The point which seems to be missed is that the inconvenience must have an effect on the value of the land to be an element in the assessment of damages in the present action. This was brought home by the challenged instruction when read as a whole. That evidence was admitted, without objection, concerning items of personal inconvenience stemming from appellant's operations is beside the point.

The instructions given to the jury present a proper statement of the law applicable to the case. We thus find no reason to disturb the judgment rendered on the jury verdict on the basis of appellant's challenge to those instructions.

### IV.

Having found the application of the surface damages act to the present case to be constitutional and having found no merit in the other arguments presented by appellant, the judgment of the trial court is AFFIRMED.

17. See *Eckels v. Traverse*, 362 P.2d 680 (Okla. 1961).

18. In *Oklahoma Turnpike Authority v. Burk*, 415 P.2d 1001, 1005 (Okla.1966), this Court stated: However, in Oklahoma the rule long applied is that the jury is entitled to consider inconvenience, which interferes with the owner's use and enjoyment of his property, in assess-

DOOLIN, V.C.J., and HARGRAVE, ALMA WILSON and KAUGER JJ., concur.

SIMMS, C.J., and HODGES and SUMMERS, JJ., dissent.

OPALA, J., dissents from the retroactive application of the surface damages act.

SUMMERS, Justice, dissenting opinion on rehearing.

I respectfully dissent. Application of the Surface Damages Act (52 O.S.Supp.1982 § 318.2–318.9 to the lease in this case (which had been executed prior to effective date of the Act) would impair contractual rights established by that lease. Because the legislature in the Act expressed that "Nothing herein contained shall be construed to impair existing contractual rights....", 52 O.S.Supp.1982 § 318.7, I would not hold the Act applicable in this case.

The trial court instructed the jury that even though the operator had a right to use so much of the surface as was reasonably necessary for its operations, the operator was required to pay the surface owner for damage to the land used. The jury was instructed that diminution in the market value of Cloud's property due to the drilling operations was the proper standard for determining such damages. Such instruction properly states the law under the present Surface Damages Act, but is an incorrect statement if the parties' rights are governed by an agreement that pre-dated the Act. *Cities Service Oil Co. v. Dacus*, 325 P.2d 1035 (1958).

The operator in contending that application of the Surface Damages Act and mea-

ing damages. *St. Louis, E.R. & W. Ry. Co. v. Oliver*, 17 Okl. 589, 87 P. 423, 10 Ann.Cas. 748; *Grand River Dam Authority v. Gray* [192 Okl. 547, 138 P.2d 100], supra; *Driver v. Oklahoma Turnpike Authority* [343 P.2d 1079], supra.

19. See 52 O.S.Supp.1982 § 318.5(F).

suring damages by the diminution in the market value of the land was improper, points out that the right to reasonable use of the surface under the lease included the right to such use without payment of damages. It contends that the application of the Surface Damages Act to leases executed prior to the effective date of the Act is a retroactive impairment of an obligation of contract prohibited by the Okla. Const. Art. II, § 15 and the U.S. Constitution, Art. I, § 10.

The "right" at issue arises from the obligations created by the lease. Specifically, it is the lessee's right to reasonable use of the surface estate. In describing an oil and gas lease we have said:

"In other words, it was a grant of the exclusive right, for the time specified, to take all the oil and gas that could be found by drilling wells upon the particular tract of land, with the accompanying incidental right to occupy so much of the surface as required to do those things necessary to the discovery of and for the enjoyment of the principal right so to take oil or gas," *Rich v. Doneghey*, 71 Okl. 204, 177 P. 86, 89–90 (1918)

The oil and gas lease grants a present vested interest in the land of the grantor. *Rich v. Doneghey*, 177 P. at 89. A part of this vested interest is the lessee's right to use the surface estate. *Anschutz Corp. v. Sanders*, 734 P.2d 1290, 1291 (Okl.1987); *Ricks Exploration v. Oklahoma Water Resources Board*, 695 P.2d 498, 503 (Okl. 1984). The surface estate is servient to the estate created by the oil and gas lease for purposes of the lease. *Wellsville Oil Co. v. Carver*, 242 P.2d 151, 154 (Okl.1952). However, the lessee's right to use the surface estate is not without restriction. The lessee is only entitled to the use of the surface estate reasonably necessary for exploration and production of oil and gas. *Lanahan v. Meyers*, 389 P.2d 92, 93 (Okl. 1963).

The majority holds that an operator's reasonable use of the surface estate is a common law defense to an action for damages to the surface estate. Language is found in *Pulaski Oil Co. v. Connor*, 62 Okl. 211, 162 P. 464, 466 (1916), which describes the reasonable use of the surface estate as an "affirmative defense." The argument then adopted is that the Legislature may abolish the defense of reasonable use of the surface estate because vested rights are not created by affirmative defenses or rules of common law. However, characterizing the lessee's interest as an affirmative defense does not define that interest. The characterization merely indicates the procedure for judicial recognition of the interest so as to bar a surface owner's claim for damages to the surface estate.

Affirmative defenses may represent a variety of legally cognizable interests. For example, the affirmative defense of a true or ordinary statute of limitations is a matter of legislative grace and no vested right to a particular statute of limitations exists until a claim is barred by the statute which governs it. *Trinity Broadcasting Corp. v. Leeco Oil Co.*, 692 P.2d 1364 (Okl.1984). However, an affirmative defense such as an accord and satisfaction expresses a contractual right. *Continental Gin Co. v. Arnold*, 52 Okl. 569, 153 P. 160 (1915). Contractual rights receive some protection from legislative infringement by the Oklahoma Constitution, specifically Okla. Const. Art. II, § 15: "No ... law impairing the obligation of contracts ... shall ever be passed." Classifying the operator's right to reasonable use of the surface estate as a defense does not address the issue of determining that degree of legislative infringement which may be constitutionally permissible. Additionally, classifying the operator's right to reasonable use of the surface estate as an affirmative defense is not in accord with pronouncements of this Court more recent than *Pulaski Oil Co. v. Connor*, supra.

The burden of proof of an affirmative defense is on the party asserting the defense. *Pacific Ins. Co. of N.Y. v. Frank*, 452 P.2d 794 (Okl.1969). But we have held

that reasonable use of the surface estate by the operator is not a defense to be pled and then proved by the operator; rather that the surface owner must plead and prove that the operator's use was unreasonable. In *Davon Drilling Co. v. Ginder*, 467 P.2d 470 (Okl.1970), we stated:

"[P]laintiff's only recourse would have been to establish injury resulting from defendant's unreasonable operations. *Magnolia Petroleum Co. v. Howard*, 182 Okl. 101, 77 P.2d 18. *The burden of proving unreasonableness, that defendant [lessee operator] used more of the surface than necessary, would have been upon plaintiff* [surface owner]." Id. 467 P.2d at 473. (Explanations and emphasis Added).

See also *Cities Service Oil Co. v. Dacus*, supra. The cause of action for unreasonable use must be pled and proved by the plaintiff/surface owner, a view inconsistent with classifying the operator's reasonable use of the surface as a defense.

The rights granted by an oil and gas lease are contractual and the lease constitutes the contract. *Indian Territory Illuminating Oil Co., v. Rosamond*, 190 Okl. 46, 120 P.2d 349, 353 (Okl.1941). See also, *Ricks Exploration v. Oklahoma Water Resources Board*, 695 P.2d 498, 503–504 (Okl.1984), which held that contractual rights created by an oil and gas lease are "vested rights" and protected from legislative invasion by Art. 5, § 52 and § 54 of the Oklahoma Constitution. The issue presented is whether the operator's interest in the reasonable use of the surface estate is a contractual right.

The operator's right to use the surface was derived from the "implications" of the oil and gas lease. *Pulaski Oil Co. v. Connor*, 62 Okl. 211, 162 P. 464, 466 (1916), citing *Gulf Pipe Line Co. v. Pawnee–Tulsa Petroleum Co.*, 34 Okl. 775, 127 P. 252 (1912). In *Indian Territory Illuminating Oil Co. v. Rosamond*, 120 P.2d at 353–54, the Court stated the following:

"In the leading case of *Brewster v. Lanyon Zinc. Co.*, 8 Cir. 140 F. 801, 811, 72 C.C.A. 213, it was said:

'Whatever is necessary to the accomplishment of that which is expressly contracted to be done is part and parcel of the contract, though not specified.  *  *  *  The question is essentially one of intention.  *  *  *  A covenant arising by necessary implication is as much a part of the contract—is as effectually one of its terms—as if it had been plainly expressed.' We have held that such covenants arise 'be necessary implication from the nature of the lease and other stipulations therein contained.' *Indiana Oil, Gas and Development Co. v. McCrory*, 42 Okl. 136, 140 P. 610." *Id.*

"In *Acme Oil & Mining Co. v. Williams*, 140 Cal. 681, 74 P. 296, 297, it is said that the implied covenant for diligent operation 'stands upon the same footing as if it was expressly contained therein.'" *Id.* 120 P. at 354.

"That such covenants are part of the lease, embodied therein in order to carry out the evident intention of the contracting parties seems reasonably well settled." *Id.*

The court then found that the implied covenant to protect against drainage "is a part of the written lease as fully as if it had been expressly contained therein." *Id.* Cf. *Rogers v. Heston Oil Co.*, 735 P.2d 542, 546 (Okl.1984) which held the implied covenant to protect from drainage is implied in fact "to carry out what the parties must have intended which the courts read into the lease as an integral part thereof." In *Anschutz Corp. v. Sanders*, 734 P.2d 1290 (Okl.1987), we quoted with approval the following:

"An oil and gas lease, either by express grant or by implication, carries the right to surface possession so far as necessarily incident to perform the obligations imposed by the lease. Summer's Oil and Gas (Per Ed.) § 652; *Pulaski Oil Co. v. Connor*, 62 Okl. 211, 162 P. 464; L.R.A. 1917, C, 1190. Basis of the Rule rests upon the principle that when a thing is granted all means to obtain it and all fruits and effects likewise are granted...." *Id.* 734 P.2d at 1291.

The implied covenant to reasonable use of the surface estate is thus "a part of the written lease as fully as if it had been expressly contained therein". *Indian Territory Oil Co. v. Rosamond,* supra, and *Anschutz Corp. v. Sanders,* supra.

The operator had a right to use the surface estate, and if the use was reasonably necessary for the production of oil and gas the surface owner was not entitled to compensation. *Cities Service Oil Co. v. Dacus,* supra. If the operator's use of the surface was unreasonable then the surface owner would have a cause of action against the operator for such wrongful conduct. *Wilcox Oil Co. v. Lawson,* 341 P.2d 591, 594 (Okl.1959). Thus, the exercise of the right to reasonable use of the surface did not impose any liability for damages on the operator.

I would find that application of the Surface Damages Act to leases executed prior to the effective date of the Act does impair a contractual right. The Act requires the operator to bargain with the surface owner for what was recognized as an operator's contractual right to reasonable use of the surface estate without the payment of damages. Cf. *Ricks Exploration v. Oklahoma Water Resources Board,* 695 P.2d 498, 504 (Okl.1984), where the Board "placed the mineral owner in the position of having to bargain with the surface owner for what is recognized as his common law right of free access to reasonable use of groundwater for oil and gas purposes" and the Court refused "to conclude that the Act [82 O.S. 1981 § 1020.11(D)] operates to alter private common law rights of the mineral owner".

A finding of statutory impairment of contractual obligations is of itself insufficient to hold that the statute violates the state or federal Contracts Clause. A state may in some cases exercise its police power and properly alter existing contractual obligations. *Anderson–Prichard Oil Corp. v. Corporation Commission,* 241 P.2d 363 (Okl.1951), appeal dismissed, 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 698 (1952). That police power is, of course, subject to certain limits by the Contracts Clause. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 242, 244 N. 15, 98 S.Ct. 2716, 2721, 2722 n. 15, 57 L.Ed.2d 727 (1978). However, further analysis of the Contracts Clause or Oklahoma Constitution Art. II, § 15 is not necessary here. That is because the Legislature stated that the Surface Damages Act should not impair existing contractual rights. 52 O.S.Supp.1982 § 318.7 provides in part:

> *"Nothing herein contained shall be construed to impair existing contractual rights* nor shall it prohibit parties from contracting to establish correlative rights on the subject matter of the act. *Id.* (emphasis added)

The operator's right to reasonable use of the surface estate without payment for the exercise thereof was an "existing contractual right" by reason of the lease executed prior to the effective date of the Surface Damages Act. The contractual right arises from an implied covenant and as such it is treated as if fully expressed in the written lease. Thus, no distinction may be drawn for enforcement purposes between provisions fully expressed and those implied but treated as if fully expressed. The operator had a statutory right to *not* have the Act applied to the lease in question. *Id.* In summary: 1. Application of the Act to leases executed prior to the Act impairs contractual rights; 2. The Act provides that it shall not be construed to impair contractual rights; and therefore, 3. The Act does not apply to leases in existence prior to its effective date. The judgment on the jury verdict should be vacated.

Although the Act should not be held applicable the parties have nonetheless invoked the trial court's subject matter jurisdiction to determine damages, if any, to Cloud's surface ownership. This court may reverse a judgment, remand a case for further proceedings, and direct the recasting of pleadings in order that justice may be done. *Johnston v. Dill,* 179 Okl. 32, 64 P.2d 329 (1937). I would remand and direct

the trial court to permit the parties to amend their pleadings in order to frame the issues ripe for resolution of this controversy without resort to the Surface Damages Act, and conduct such further proceedings as may be appropriate to that end.

I am authorized to state that Vice Chief Justice OPALA, and Justices HODGES and SIMMS share these views.