**Windle TURLEY, et ux., Shirley Turley, Plaintiffs,**

v.

**MEWBOURNE OIL CO., Defendant.**

**No. CIV–89–174–W.**

United States District Court,
W.D. Oklahoma.

June 6, 1989.

Janis W. Preslar, H.B. Watson, Jr., Watson & McKinzie, Oklahoma City, Okl., for plaintiffs.

Linda G. Scoggins, Barbara Swimley, Robert G. Gum, Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for defendant.

## ORDER

LEE R. WEST, District Judge.

In the action before this Court, the Plaintiffs seek declaratory and permanent injunctive relief to enjoin Defendant Mewbourne Oil Company from taking further action pursuant to Corporation Commission Order No. 333344. The Order increased the number of wells that could be drilled on a tract of land of which the Plaintiffs own the surface rights only. Plaintiffs assert that the Order is unconstitutional because it is based upon an Oklahoma statute, 52 O.S. § 87.2, which violates the Fifth and Fourteenth Amendments of the United States Constitution by taking surface own-

er's property through well spacing application proceedings without giving the surface owner notice and an opportunity to be heard. Plaintiffs further contend that the statute violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by disparate treatment without a rational basis.

Title 52 O.S. § 87.2. the Oklahoma statute regarding protests of spacing units, sets out who is entitled to notice and an opportunity to be heard at well spacing proceedings. Title 52 O.S. § 87.2 provides that owners of the mineral estate, or owners of the right to drill a well for oil and gas on the lands, or owners of correlative rights within the common source of supply are the proper parties to receive notice and to protest the applications to establish additional wells in any well spacing proceeding. Under the statute, surface owners are not entitled to notice and an opportunity to be heard at such proceedings. The statute does provide that other persons may be granted leave to intervene in such a proceeding based upon clear and convincing evidence that such persons have substantial rights which may be adversely affected by the outcome of the proceedings.

The surface owners assert that the Corporation Commission's Order allowing the drilling of additional wells constitutes a "taking" of the surface owner's property because pursuant to that Order an oil and gas operator may enter the land to drill a well.

[1] The Court finds that insofar as a surface owner has a protected interest when an oil and gas operator enters to drill a well for oil and gas purposes, the Oklahoma Surface Damages Act, 52 O.S. §§ 318.2–318.9, provides an adequate remedy for any "taking" of the surface owner's interest.

[2, 3] The Court further finds that procedural due process requirements do not attach to the surface owner's interest for purposes of notice and opportunity to be heard at well spacing proceedings under 52 O.S. § 87.2. Therefore, the issue of whether plaintiffs received actual notice is moot. Although the Oklahoma Surface Damages Act greatly enhances the surface owner's

rights when an oil and gas operator enters the land, said Act does not create a constitutionally protected property interest enabling the surface owner to dispute the necessity of the "taking" of the surface owner's interest. The Oklahoma Surface Damages Act creates a right to monetary compensation only.

[4] The Court also finds that 52 O.S. § 87.2 does not deprive the Plaintiffs of equal protection under the laws as the severed mineral owners and the surface owners are not so similarly situated as to create an arbitrary classification. The legislature rationally excluded those who held no interest in the mineral estate, thus promoting efficient conservation proceedings. Therefore, the classification meets the rational basis test articulated by the supreme court in areas of economics and social welfare. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

[5] Under Oklahoma law, a lease carries with it the incidental or implied right to enter, possess and use the surface to the extent reasonably necessary to enable the lessee to perform and effectuate the lease. *Wellsville Oil Co. v. Carver*, 206 Okl. 181, 242 P.2d 151 (1952); *Thompson v. Andover Oil Co.*, 691 P.2d 77 (Okla. App.1984). Prior to the passage of the Oklahoma Surface Damages Act, the oil and gas operator maintained a common law defense to the surface owner's action for damages by asserting that only reasonable and necessary use of the land occurred. Since the passage of the Oklahoma Surface Damages Act, the Supreme Court of Oklahoma interpreted said Act as requiring an assessment of damages pursuant to the diminution in the market value of the surface owner's land. In so holding, the court abolished the oil and gas operator's defense provided by common law. *See Davis Oil Co. v. Cloud*, 766 P.2d 1347 (Okla.1986). However, the Supreme Court of Oklahoma narrowly construed the Oklahoma Surface Damages Act as changing the standard of liability only, not conferring an independent property right contrary to the surface owner's implied grant of ingress and egress. *Id.* at 1349–1350.

This view of narrowly construing the Oklahoma Surface Damages Act regarding

access to the mineral estate was reinforced in *Anschutz Corp. v. Sanders*, 734 P.2d 1290 (1987), where the Supreme Court of Oklahoma narrowly construed the Oklahoma Surface Damages Act as inapplicable to an oil and gas operator who entered the surface owner's land for purposes of exploration. The court, citing decisional law upholding the mineral estate holder's access rights, stated:

> Any subsequent legislative action taken in derogation of these recognized rights of access to the surface must be strictly construed against the abrogation of such rights. *Id.* at 1291.

This Court agrees. If the Oklahoma Surface Damages Act were construed as conferring a right upon the surface owner to dispute access to the surface and the necessity of drilling, such a right could preclude mineral owners from drilling; thereby diminishing the mineral owners' access interests, and thwarting the Oklahoma statutory scheme for efficiently developing oil and gas fields.

Title 52 O.S. § 87.2 which sets out who is entitled to protest well spacing units and the Oklahoma Surface Damages Act are construed by this Court as part of a consistent statutory scheme whereby the Oklahoma Legislature recognizes the rights of each and different interest holders at particular points at which their rights become significant. The statutes allow a balancing of each estate holder's rights, such that one does not encroach upon the other. *See Davis Oil Co., supra* at 1351.

To the extent that the Oklahoma Surface Damages Act created a protected right for any "taking" of the surface owner's property, it simultaneously created an adequate remedy for said "taking." *See Blanchette v. Connecticut General Ins. Corp.*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). In the *Blanchette* case, the Supreme Court of the United States held that the existence of an alternative statutory remedy negated the claim that the Rail Act violated the Fifth Amendment of the United States Constitution because the Tucker Act provided the remedy of just compensation for any "taking" under the Rail Act. The Supreme Court further held that the

complainants sought only monetary compensation, and therefore the Tucker Act cured any procedural due process issues that may have arisen pursuant to the Rail Act. *Id.* at 156, 95 S.Ct. at 365.

By analogy, this Court holds that to the extent any "taking" of the surface owners' property occurs pursuant to 52 O.S. § 87.2, the surface owners are afforded an adequate remedy at law under the Oklahoma Surface Damages Act. The Court further finds that to the extent that any procedural due process is lacking pursuant to 52 O.S. § 87.2, the Oklahoma Surface Damages Act cures the deficiency by providing a judicial proceeding with notice and an opportunity to be heard for monetary compensation which is the only right the surface owner has under these circumstances.

The Plaintiffs' complaint seeking permanent injunctive relief is hereby DENIED.