897 F.2d 456
 Dorothy Dann COLLINS, Independent Administratrix of the
Estate of James M. Collins, Trustee,
Plaintiff-Appellant, Cross-Appellee,
v.
John C. OXLEY, d/b/a Oxley Petroleum,
Defendant-Counterclaimant-Appellee, Cross-Appellant.
 Nos. 88-1892, 88-2077, 88-2139.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 26, 1990.
 
 Paul G. Smith, P.C., Norman, Okl. (Mike Turpen and Richard Mildren of Chapel, Wilkinson, Riggs & Abney, Oklahoma City, Okl., with him on the brief), for plaintiff-appellant, cross-appellee.
 J. David Jorgenson (George H. Lowrey, Tulsa, Okl., of counsel: Conner & Winters, Tulsa, Okl., with him on the brief), for defendant-counterclaimant-appellee, cross-appellant.
 Before BALDOCK and McWILLIAMS, Circuit Judges, and KANE, District Judge.*
 McWILLIAMS, Circuit Judge.
 
 No. 88-1892
 
 1
 This diversity case involves the Oklahoma Surface Damage Act (the Act), Okla.Stat. tit. 52, Sec. 318.2 (Supp. I 1987). The effective date of the Act was July 1, 1982. Prior to that date, under Oklahoma law the holder of an oil and gas lease had an implied right to enter upon the leased premises and make such use of the surface as was reasonably necessary to develop and produce oil and gas without liability to the surface owner for damage to the surface. He would, however, have been liable to the surface owner for damages resulting from unreasonable entry on the land or unreasonable use of the surface. Lone Star Producing Co. v. Jury, 445 P.2d 284 (Okla.1968); Wilcox Oil Co. v. Lawson, 341 P.2d 591 (Okla.1959); Cities Service Oil Co. v. Dacus, 325 P.2d 1035 (Okla.1958); Marland Oil Co. v. Hubbard, 168 Okl. 518, 34 P.2d 278 (1934).
 
 
 2
 The Act purported to change the duty owed by the lessee to the surface owner to one of so-called strict liability whereby the lessee would be liable to the surface owner for any damage caused the surface by his drilling operation. The Act provided, inter alia, that the lessee give the surface owner notice of intent to drill before entering on the leased premises, thereafter, prior to entry, to negotiate in good faith with the surface owner to determine possible surface damage, to file, prior to any entry, an undertaking in the amount of $25,000 to be used for payment of surface damage caused by the drilling operation, and, if the negotiations were unsuccessful, to have appraisers appointed who would inspect the property and then file a written report with the court fixing the amount of compensation, if any, to be paid by the operator to the surface owner.[1] A further provision of the Act provided that either of the parties could take exception to the appraisers' report and demand trial by jury.
 
 
 3
 From about 1965 to 1975 John C. Oxley, d/b/a Oxley Petroleum Company, acquired six oil and gas leases on land located in Latimer and Pittsburg Counties in Oklahoma, from W. Erle and Emma M. White. On December 26, 1985, James M. Collins bought the land in question from the Whites for $2,700,000. From and after December 24, 1985, to and through December, 1987, Oxley drilled six oil and gas wells on the leases which he held on the so-called Collins' ranch.
 
 
 4
 On July 30, 1987, Collins, a resident of Texas, brought suit in the United States District Court for the Eastern District of Oklahoma against Oxley, a resident of Oklahoma, charging that Oxley in drilling five wells violated the Act. Jurisdiction was based on diversity. 28 U.S.C. Sec. 1332. Oxley later filed suit in a state court of Oklahoma in connection with the sixth well which he drilled on the Collins' ranch. The state court proceeding was removed to the federal district court and consolidated with the proceeding instituted by Collins in the United States District Court for the Eastern District of Oklahoma.
 
 
 5
 Oxley filed a motion for summary judgment, arguing, inter alia, that the Act did not apply to him since his leases predated the effective date of the Act, application of the Act to him would violate the Constitution, and, further, that Collins no longer was the real party in interest inasmuch as on March 4, 1988, he had conveyed his surface interest in the Collins' ranch to the Oklahoma Wildlife Department for $2,100,000. The district court granted that motion and entered judgment dismissing Collins' claims against Oxley based on the Act.[2] Collins appeals the judgment.
 
 
 6
 In its order granting Oxley's motion for summary judgment, the trial court declared that since Oxley's leases predated the effective date of the Act, Oxley, under Oklahoma law, had a vested property right to enter on the leased premises and make such use of the surface as was reasonably necessary to develop and produce oil and gas without liability to the surface owner. Because of such vested property right, the district court held that the Act by its own terms did not apply to Oxley, citing Okla.Stat. tit. 52, Sec. 318.7 (Supp. I 1987), which provides as follows:
 
 
 7
 "Nothing herein contained shall be construed to impair existing contractual rights nor shall it prohibit parties from contracting to establish correlative rights on the subject matter contained in this Act (emphasis added)."
 
 
 8
 Having concluded that the Act by its own terms did not apply to Oxley, the district court did not rule on Oxley's constitutional challenge to the Act. However, the district court gave as an "additional reason" for granting summary judgment the fact that Collins, after instituting a suit under the Act, conveyed his interest in the ranch to the Oklahoma Wildlife Department. Because of such conveyance, the district court concluded that even if the Act had application, the Oklahoma Wildlife Department, and not Collins, was the real party in interest.
 
 
 9
 The district court entered its order granting Oxley's motion for summary judgment on June 1, 1988. On November 18, 1986, the Oklahoma Supreme Court in Davis Oil Company v. Cloud held that although under Oklahoma law the holder of an oil and gas lease predating the Act had an implied right to enter on the surface to develop and produce oil and gas, he did not have any vested right to be liable to the surface owner for surface damage for unreasonable use only.[3] In that case, the parties voluntarily entered into negotiations regarding surface damages in accordance with the Act, but were unable to agree to terms. The surface owner took exceptions to the appraiser's report and a jury trial ensued. The jury assessed the surface owner's damages at $15,000. Davis appealed. On appeal, Davis contended that the appropriate standard for assessing surface damages was the standard in effect prior to the passage of the Act. The court, in Davis, held that the new strict liability standard under the Act modified the standard for assessing surface damage under old leases, and held that the Act did apply to leases entered into before the effective date of the Act where the drilling operation occurred after the effective date of the Act. In so doing, the Oklahoma Supreme Court construed Okla.Stat. tit. 52, Sec. 318.7 (Supp. I 1987) "as only applying to contracts in which damage provision standards are specifically set forth in the contract." (See footnote 11 in the Davis opinion.)
 
 
 10
 At the time of its order, the district court was fully apprised of Davis Oil Company v. Cloud, which now appears at 766 P.2d 1347 (Okla.1986). However, when the district court entered its order in the instant case, a petition for rehearing was pending in Davis Oil Co. v. Cloud, supra. Such being the case, the district court reasoned that it was not bound to follow Davis Oil Co. v. Cloud, supra, and elected to follow unpublished decisions by a federal district court in the Northern District of Oklahoma and another federal district court in the Western District of Oklahoma, both of which apparently predated Davis Oil Co. v. Cloud, supra.
 
 
 11
 On January 17, 1989, the Oklahoma Supreme Court denied the petition for rehearing in Davis Oil Co. v. Cloud, supra, and basically adhered to its earlier opinion. However, the earlier opinion was on a 7-1 vote, whereas on rehearing the vote was 5-4. On rehearing, there was a written dissent which paralleled the order of the district court in the instant case, i.e., prior to the Act a holder of an oil and gas lease, under Oklahoma law, had a vested right to enter onto the leased premises and develop and produce oil and gas without liability to the surface owner except for unreasonable entry or use and, accordingly, under Okla.Stat. tit. 52, Sec. 318.7, the Act did not apply to a lease predating the Act. However, the majority in Davis Oil Co. v. Cloud, supra, continued to hold that under Oklahoma law as it existed before the Act the holder of an oil and gas lease only had an implied right to enter onto the surface and conduct drilling operations and did not have an implied right to be free of liability to the surface owner except for damages caused by unreasonable entry and use, and that, accordingly, the Act did apply to leases predating the Act.
 
 
 12
 Certainly at this point in time we are bound by Davis Oil Co. v. Cloud, supra. The primary reason given by the district court for granting Oxley summary judgment was that since his leases predated the Act, Oxley had an implied, but vested, right to enter onto the Collins ranch and drill without liability to Collins, except for unreasonable entry or use. That line of reasoning has now been finally rejected by a majority of the Oklahoma Supreme Court in Davis Oil Co. v. Cloud, supra.
 
 
 13
 As above mentioned, as an additional and alternative reason for granting Oxley summary judgment, the district court concluded that since Collins conveyed his ranch to the Oklahoma Wildlife Department on March 4, 1988, for $2,100,000, he no longer could maintain an action against Oxley (and presumably could no longer defend the action brought by Oxley against him), because he was not the real party in interest. In this regard, the district court opined that the purpose behind the Act was to reimburse the surface owner for damage done the surface by the driller, and that the surface owner would then use the monies to restore the damaged surface to its original condition, and that since Collins had sold the property he would not be in a position to do any restoration. We are not persuaded by this reasoning.
 
 
 14
 In his brief to this court, Collins points out that Okla.Stat. tit. 52, Sec. 318.5F (Supp. I 1987) provides that "[T]he trial shall be conducted and judgment entered in the same manner as railroad condemnation actions in the courts," and, according to counsel, it is well established in Oklahoma that the owner of the land has the right to damages caused by a railroad's taking of his land, or a part thereof, and that such right does not pass to a grantee of the land under a deed made subsequent to the taking unless expressly conveyed thereunder, citing Cox Enterprises, Ltd. v. Phillips Petroleum Company, 550 P.2d 1324 (Okla.1976) and Peckham v. Atchinson, Topeka & Santa Fe Railway Company, 88 Okl. 174, 212 P. 427 (1923). In connection therewith, counsel points out that Collins was the record owner of the ranch when the wells were drilled and the damage incurred, was the record owner when the present litigation was instituted, and that his contract to sell with the Oklahoma Wildlife Department expressly reserved his rights against Oxley. All things considered, summary judgment for Oxley on the ground that the Oklahoma Wildlife Department was the real party in interest, not Collins, was improper.[4]
 
 No. 88-2077
 
 15
 This appeal concerns the district court's order regarding the fees to be paid the appraisers. The Act provides that "[t]he operator and the surface owner shall share equally in the payment of the appraisers' fees and court costs." Okla.Stat. tit. 52, Sec. 318.5C (Supp. I 1987). As to two of the three appraisers, the district court followed the statute and directed Collins and Oxley to share equally in the fees. However, as to the third appraiser, Mr. Ward, the district court set his fee at $3,952.80 and ultimately ordered Collins to pay that fee in its entirety. Apparently, Collins had himself made a "prepayment" to Ward of the sum of $3,100, and the district court voiced the opinion that such payment by one of the parties gave an appearance of "tainting the appraisal process." Counsel for Collins in his brief denies such suggestion and states that the "prepayment" was "subject to the court's subsequent determination of a reasonable fee for Ward." Be all that as it may, the record before us does not justify the district court's departure from the plain language of the Act that the appraisers' fee be shared equally.
 
 No. 88-2139
 
 16
 When Oxley filed his motion for summary judgment he also asked for sanctions against Collins and his counsel. The district court denied this request, apparently believing that Davis Oil Co. v. Cloud, supra, gave Collins some basis for instituting the action. Oxley's request for sanctions was based, in part, on the fact that Collins bought the ranch for $2,700,000, sued Oxley for compensatory damages in the amount of $14,000,000, and additionally asked for punitive damages in the sum of $52,000,000, and that the appraisers later fixed total damages at around $15,000. The exorbitant claim for damages, according to counsel, demonstrates that the suit was not instituted in good faith.
 
 
 17
 Be this as it may, the district court did not err in denying sanctions. Further, in view of our determination that the reasons advanced by the district court for granting Oxley summary judgment are invalid, any extended discussion of sanctions at this time is premature.
 
 
 18
 No. 88-1892. Judgment reversed and case remanded for further proceedings.
 
 
 19
 No. 88-2077. Judgment reversed and case remanded for further proceedings.
 
 
 20
 No. 88-2139. Judgment affirmed.
 
 
 
 *
 Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation
 
 
 [1]
 Under the Act, once a lessee petitions for appointment of appraisers, he may enter the site to drill
 
 
 [2]
 Collins had also asserted claims against Oxley based on unreasonable use, nuisance and trespass. The district court denied Oxley's motion for summary judgment on those claims. However, those so-called "common law" claims were dismissed by agreement between the parties. Hence, the present appeal is from a final judgment disposing of all claims
 
 
 [3]
 Justice Opala dissented, but wrote no dissenting opinion
 
 
 [4]
 In this court, Oxley challenges the applicability of the Act on other grounds, some of which were not raised in the district court, and, in any event, were not the basis for the district court's granting of summary judgment. We are here considering only the validity of the reasons given by the district court for granting summary judgment